LOREE *vs.* REEVES.

L. commenced a suit in attachment against R., a non-resident of the State, on 10th April, 1849. R., who resided in Orange County, in the State of New York, was first apprised of the attachment suit, on the 21st May, and on the next day wrote to A., a resident of the county in which the suit was pending, to employ H., an attorney, to appear and defend the suit for him, and was afterwards informed that H. had been so employed by A. On 21st August, in consequence of being unable, after much effort to ascertain the situation of the cause, or any information as to the course his attorney was pursuing, R. employed and sent J., an attorney of Orange County, to learn the facts and see that the case was attended to. On the 20th September, J. returned, and informed him that H. had not appeared in the cause, or interposed any defense whatever, and that the plaintiff had obtained judgment, and sold the property attached, upon an execution. Upon affidavits showing these facts, and

stating that defendant was not indebted to the plaintiff in any sum whatever, and that he had a good and substantial defense upon the merits, a motion was made on the 26th November, to set aside the judgment and all subsequent proceedings, and for a new trial on the ground of surprise. *Held,* that the motion should be granted.

Case reserved from Livingston County Court. Attachment. The affidavit of the plaintiff, on which the attachment issued, stated that defendant was indebted to him in the sum of $237, and that defendant was not a resident of the State. The writ was issued on 10th of April, 1849, and was made returnable on the 23d of the same month.

Under it, real estate appraised at $10,000, was attached. On the 26th of June following, the plaintiff filed his declaration, by which he claimed the defendant was indebted to him for wheat and flour, and proceeded to trial *ex parte*, and obtained a judgment for $247,22 damages, and $23,43 costs, upon which an execution was issued and levied on the real estate attached; all of which on the 27th of August following was sold, and bid off by the plaintiff at $281,71. On the 26th of November after, defendant, by Wilson & Hubbard, his attorneys, appeared and entered a motion, founded on affidavits of defendant and two other persons, to set aside the judgment and all subsequent proceedings, and for a new trial, on the ground of *surprise*. The facts stated in the affidavits appear in the opinion of the Court.

*Wilson & Hubbard,* for defendant.

*F. C. Whipple,* for plaintiff.

By the Court, PRATT, J.

Courts of record are vested with general discretionary power, on the subject of granting new trials; yet this discretionary power is judicial, and not arbitrary, and should always be exercised by Courts with great care in moulding their decisions on applications for new trials, in view of the peculiar circumstances connected with each case, so as to subserve the purposes of substantial justice, and in protecting at the same time, the just and equitable rights of both parties. The actual administration of impartial justice, is the great primary principle upon which judicial tribunals have been vested with this discretionary power; it is often

indispensable in granting to suitors such relief as strict justice may require. Under it, relief has often been granted to parties for the last five hundred years, and the great utility of this branch of judicial power is not only recognized in all courts of record, but it has become a settled and well established principle in legal practice, to grant new trials whenever it becomes necessary for the protection of a party in his just rights, where such party clearly has merits, and has not legally waived his rights, or otherwise lost them by some improper or unjustifiable *laches* on his part. The grounds are numerous upon which relief in this manner is granted: it is granted for want of notice of trial, where such notice is required, or for other irregularities in the prosecution of causes—for the misconduct of the prevailing party—misbehavior of the jury—improper admission or rejection of testimony—misdirecting the jury—newly discovered evidence—surprise of a party—excessive damages—and for various other causes.

This application by the defendant for a new trial, is predicated on the ground of *surprise*, in learning that judgment had been rendered against him by default, &c. If the defendant, who seeks in this manner to be relieved from the effect of the judgment, has in fact a meritorious defense, which, with ordinary diligence on his part, he has been unable to make available, most certainly he has, in principle, as well as by precedents, a just claim upon the consideration of the Court for relief.

From the affidavits upon which this motion was submitted to the Court, it appears that the defendant is a resident of the county of Orange, in the State of New York; that he was first apprised of the commencement of this suit on the 21st day of May, 1849, and that on the next day he wrote to Mr. Allison, of the county of Livingston, requesting him to employ O. Hawkins, an attorney at law, of Ann Arbor, to appear and defend the suit for him, and was subsequently informed that he was so employed by Mr. Allison; that afterwards, and on the 20th day of August, in consequence of being unable, after much effort, to ascertain the situation of the cause, or any information as to the course his attorney was pursuing therein touching his defense, he employed and sent Charles Jansen, Esq., an attorney at law from the county of Orange, to learn the facts and see that it was attended to; who,

on.or about the 20th of September, returned and informed him that his attorney (Hawkins) had neither appeared in the cause, or interposed any defense, but had entirely abandoned the same; and that the plaintiff had obtained judgment, and sold all the property attached on execution; that he was never indebted to the plaintiff in any sum whatever, for wheat and flour, or for any other consideration, and that he has a good and substantial defense upon the merits, &c. Mr. Allison in his affidavit, testifies that he did, pursuant to defendant's letter of 22d of May, employ O. Hawkins, Esq., who agreed to attend to the suit for the defendant. Afterwards, and on hearing that judgment had been rendered in the cause, he wrote to the attorney on the subject, but receiving no answer, went to Ann Arbor himself, where he saw him, and who said he was going to sue out a writ of error, &c.

These facts are not in any manner controverted by counter affidavits, or otherwise, and certain it is that they show *as great a degree of diligence* on the part of the defendant in preparing to defend the suit, as ordinarily to be expected under the circumstances. He resided out of the State, and at a great distance from the county in which the suit was pending.· He was prompt in taking the necessary steps to employ an attorney, and he had no right to suppose that the attorney he did retain, and in time to have attended to the suit, and to whom he confidently confided the preparation and management of his defense, would abandon his case and suffer judgment to be taken against him by default, and property to the amount of $10,000 sold on execution without even giving him notice; on the contrary, in view of the legal *obligation* resting upon an *attorney* at law as an officer of the Court, he was authorized to believe that his attorney would appear and plead for him, and apprise him of the nature of the issue joined in the cause, and the time when the same would be brought to trial. But not hearing anything from him, he even incurred the extra expense of sending an attorney from the county of Orange to Michigan, in order to protect his rights in the case, though unfortunately, when it was too late; yet the expense incurred in this step, is at least some evidence of his *bona fide* intention to defend the suit; apparently he could have had in contemplation no other object in sending this attorney to Michigan, and it is a fair legal presumption, arising at once upon the facts, that the judgment,

and sale of $10,000 worth of property to satisfy it, was in fact a *surprise* upon him. If so, then in justice, he is entitled to relief in the manner sought.

It is contended on the part of the plaintiff, that if the defendant has lost his defence to the suit by the negligence or improper conduct of his attorney, he should be compelled to seek redress by action against the attorney. But he should not be required to pursue this course, if the remedy in the end, would be either doubtful or inadequate. The defendant in his affidavit, states that the attorney is reputed to be irresponsible; and Mr. Allison testifies, that "for several years, he has been well acquainted with his pecuniary circumstances, and that he is wholly irresponsible."

The only answer to this evidence, is the affidavit of the attorney himself, and which is, at least, singular. He does not deny being retained by the defendant, nor does he assign any reason for his subsequent course on the subject; and as to his responsibility, he says, "that he is ready, able and willing to pay any amount of damage that the defendant has sustained by reason of any liability incurred on his part and behalf." This is neither responsive or pertinent in fact, but equivocal; and for that reason, if no other, ought not to weigh much as against the positive testimony of Allison. Upon the evidence therefore, it is clear, that the defendant's remedy as against the attorney would be a doubtful one; at any rate, such a remedy in this State, where no costs are allowed, would be most certainly inadequate. Although the responsibility of the attorney was undoubted, yet, if the defendant has in fact, a meritorious defense to the action, it would be great injustice to require him to pursue a remedy, which must necessarily be protracted, when the Court has the power to grant him speedy relief, without the trouble and expense of a suit at law and without doing any injustice to the plaintiff, he having ample security for his demand, in the property seized under the attachment. And such is the rule which has generally been adopted by Courts. (2 *Strange,* 1208; 2 *Salkeld,* 645; 3 *Caine,* 100; 1 *Price,* 201; 1 *Little,* 24; 2 *Caine,* 336; 1 *Halsted,* 344; 14 *Johns.,* 112; 3 *Taunton,* 484; 5 *New Hampshire R.,* 531; 25 *Wend.,* 663; 5 *Hill,* 272.)

It is further insisted on the part of the plaintiff, that the defendant after learning that judgment had been rendered, was guilty of *laches* in not making his application for relief at an earlier day, and therefore not entitled to relief.

The terms of the County Court at that time were held monthly; the present attorneys for the defendant were retained by Mr. Jansen about the middle of September, and before his return home; so that but one term of the Court intervened between that time and the November term, at which the application was made. The facts stated by Hubbard in his affidavit, furnish a reasonable excuse for the delay, and for the motion not having been made at the October term.

The opinion of this Court is, that the sale and judgment should be set aside, and a new trial granted, with costs to abide the event.