A. H. LOO NGAWK and TONG CHONG SOY, Executors of the will of T. AKI, deceased, *vs.* ALEXANDER J. CARTWRIGHT, SAMUEL M. DAMON and CURTIS P. IAUKEA.

APPEAL FROM DECREE OF PRESTON, J.

OCTOBER TERM, 1888.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The plaintiffs' testator had a claim against His Majesty for the sum of $71,000 and His Majesty conveyed certain property to Trustees, upon trust to apply the proceeds *pro rata* among his creditors as thereinafter appearing.

The trustees were to receive and examine all accounts, bills and claims which should be presented within three months from the date of the deed, and should approve such of them as the majority of the trustees should think just and correct, and should reject all other claims and parts of claims, and at the end of such three months to make a list of such approved claims, to which list they should add only such existing claims as should be authorized by a Court of competent jurisdiction, or be shown to their satisfaction to be just and correct.

The trustees rejected the plaintiffs' claim and they brought suit to establish it, claiming that their testator was induced to abandon certain contemplated action in the Legislature, upon His Majesty executing the deed.

Held, that upon the evidence (affirming the decree appealed from) it was established that the moving cause of the trust deed was the claim of the plaintiffs, and that the agreement to forbear presenting the claim to the Legislature, on condition that His Majesty should put his property in the hands of trustees to pay this claim, was a sufficient consideration.

26

DECISION OF PRESTON, J., APPEALED FROM.

The bill states that on the 5th of November, 1887, His Majesty being indebted to the complainants in the sum of seventy-one thousand dollars for moneys theretofore had and received to the use of said Aki, did by and with the advice and consent of his entire Cabinet agree with complainants, that in consideration that complainants would bring no proceedings and cause no petitions or bills to be introduced into the Hawaiian Legislature in the premises, all the estate of His Majesty with certain exceptions, and all the Crown Land revenues, should be assigned to Samuel M. Damon, Curtis P. Iaukea and Joseph O. Carter in trust for payment of said moneys to complainants, and that the Commissioners of Crown Lands, being so requested and authorized by His Majesty, agreed thereto in respect of the assignment of the Crown Land Revenues. That in order to avoid all unnecessary publicity concerning said indebtedness to complainants, and also as a matter of justice to such other persons as then had claims against the estate of His Majesty, it was also agreed between complainants and His Majesty and His Majesty's entire Cabinet and the Crown Lands Commissioners, that the proceeds of such trust property should also be applied pro rata to payment of such other claims as aforesaid. That the sole cause and purpose of creating such trust was clearly and mutually agreed by and between all the parties therein concerned, as aforesaid, to be that the said indebtedness to complainants should be paid pro rata out of the proceeds of the property so to be assigned in trust as aforesaid and that thereby all publicity and all proceedings concerning said indebtedness should be avoided. That a deed of trust was on the 21st day of November executed and delivered by His Majesty and by the Crown Lands Commissioners to said Samuel M. Damon, Joseph O. Carter and C. P. Iaukea as trustees for the uses, trusts and purposes above mentioned, and said trustees accepted such trust and took possession of the trust premises thereby assigned to them and were then acting as such trustees, with the exception of said Carter, who had since resigned as such trustee, and that

said defendant Cartwright had been substituted, and that said defendants were then the actual trustees under said deed or trust. That said original trustees and also said new trustee accepted such trust and took possession of the premises thereby conveyed with full knowledge of all and singular the matters before stated and set forth, and consented and agreed at and immediately before the execution of said trust deed to the payment of complainant's said claim as one of the then existing debts of His Majesty, out of such trust moneys as should thereafter come to their hands and be available for that purpose. That within three months after said 21st day of November complainants presented to the defendants in writing their said claim for said sum of $71,000 with interest thereon, and requested the defendants to approve the same in writing and to apply such moneys in their hands as should then or thereafter be available in their hands, for payment of His Majesty's debts, to the payment of complainant's said claim pro rata with the payment of such other debts of His Majesty as should be payable out of said moneys. But that the defendants absolutely refused to approve said claim or comply with said request, or to pay the same or any part thereof and wholly rejected and disapproved said claim. And the complainants submit that such refusal of the defendants is a breach of the trust created by said deed and is a fraud upon the complainants, and they submit that the defendants ought to be compelled to approve said claim and to pay the same pro rata with other debts of His Majesty, the payment whereof is in said deed of trust directed.

The complainants, by their bill as amended, pray for a decree that the defendants do approve said claim and pay the same pro rata with other debts of His Majesty, the payment whereof is in said deed of trust directed, and as alternative relief that their claim of $71.000 be established by the Court, and that the defendants be directed to pay the same pro rata, etc.

The defendants, by their answer as amended, admit the execution of the deed of trust, but deny that said deed was intended for or was upon the uses and trusts named in the bill,

and aver the truth to be that said deed was given solely for the benefit of those creditors of the grantor whose claims upon examination should appear to the trustees to be just, and whose claims should be presented to them within three months of the date of the deed or allowed by a Court of competent jurisdiction. They admit the resignation of J. O. Carter and the appointment of the defendant Cartwright and that they have accepted said trust, and the entry into possession of the assigned premises and the presentation and refusal of the complainants' claim. The defendants aver that by the terms of said deed the allowance or rejection of all claims against the grantor was confided to the defendants, that they have exercised the discretion granted to them and have rejected said claim because it was not shown to their satisfaction to be just and correct, and that said claim has not been allowed by any Court of competent jurisdiction. The defendants also aver that no just debt is due from their grantor to the complainants and that the sum of money claimed by the complainants to have been paid to their grantor, if any was so paid, was not paid to the use of the said Aki. And that the said money was intended to be offered and was offered by the said Aki as a bribe to gain the influence of the King in obtaining of the Hawaiian Government the license for the sale of opium and that for said reason complainants are not entitled to any relief in a Court of Equity.

In all other respects the defendants deny the allegations in the bill.

The cause was heard by me on the 12th and 13th inst., and it was strongly insisted by counsel for the defendants that the Court could not and should not entertain the bill, on the ground of the supposed illegal nature of the original transaction between Aki and His Majesty.

Many authorities were cited by the defendants' counsel in support of the proposition that " money paid by one party, in part performance and in furtherance of a contract in violation of law or of public policy, which is capable of execution by the acts of the parties themselves, cannot be recovered back, where both parties are in *pari delicto*."

To this general proposition there can be no dissent. But does it apply to this case?

In the first place I cannot conceive upon what grounds the defendants can ask the Court to investigate or consider the defense of illegality set up by their answer.

The defense implies, and must be taken to allege, a corrupt agreement between His Majesty and Aki. This seems to me impossible of proof in any Court of this Kingdom. See Article 39 of the Constitution.

"The King cannot be sued or held to account in any Court or Tribunal of the Kingdom."

It cannot be assumed that the King could be a party to any illegal transaction.

It is said that this money was "intended to be offered and was offered to the King as a bribe," but in the eye of the law, the King cannot be bribed, or accept a bribe, or be capable of committing a wrong.

I therefore hold that the matter set up in this part of the answer cannot be investigated or considered by me, and on full consideration I am satisfied that I ought not to have allowed the allegation to remain on the record.

If, however, it is proper for me to consider this matter, I should hold that this defense cannot avail the defendants here, as I think the plaintiffs can maintain their case without reference to the alleged illegal transaction.

This was insisted upon by counsel for plaintiffs, who cited many authorities in support of his contention, amongst others: *Gregg vs. Wyman*, 4 Cush., 327; *Smith vs. Barstow*, 2 Mich., 135, where the subject is fully considered.

The principle has been recognized by this Court. (See *Reis vs. Wendell*, 5 Hawn., 140.)

It becomes necessary to consider how this principle applies to the case before me.

The matter is to some extent historical. Rumors of existence of a claim by Aki against His Majesty had been current for some time and had been freely commented upon in the public press.

On the 30th of June, 1887, at a mass meeting held in Honolulu, and which culminated in revolution and the promulgation of a new Constitution, this matter was among others taken into consideration, and certain resolutions or demands, of which the following is one, were forwarded to His Majesty :

" Third. In order, so far as possible, to remove the stain now resting upon the Throne, we request of the King that he shall cause immediate restitution to be made of the sum to-wit: seventy-one thousand dollars ($71,000) recently obtained by him in violation of law and of his oath of office under promise that persons from whom the same was obtained should receive the license to sell opium as provided by the statute of the year 1886."

To which His Majesty was pleased to send the following reply :

" To the third proposition, We reply, that We do not admit the truth of the matters stated therein, but will submit the whole subject to Our new Cabinet and will gladly act according to their advice and will cause restitution to be made by the parties found responsible."

From the evidence of Mr. Thurston, the Minister of the Interior, and of Mr. Ashford, the Attorney-General, it appears that the Cabinet had advised His Majesty to make some settlement of this claim before the meeting of the Legislature (which it seems to me was their duty to do). That about the end of last October and the beginning of November, at a meeting of the Cabinet, His Majesty admitted that he had received this money, but claimed it was a gift to him, and it was arranged that the revenues from the Crown land should be appropriated to the repayment of this money.

The defendant, C. P. Iaukea, then His Majesty's Chamberlain and Private Secretary, endeavored to raise a sufficient sum, by mortgage of His Majesty's private property, to satisfy the claim or a part of it, and applied to the defendant Damon, who declined, and the loan was not effected.

Mr. Thurston testified that the sole object of the Cabinet was to settle this claim, and that they were not interested in obtain-

ing payment of the debts or claims of other creditors, but upon receiving a statement of the amount of the King's debts from Mr. Iaukea, they were so astonished at the amount, that they thought it would not be right to pay this claim in preference to the others, and ultimately advised His Majesty to make an assignment in trust for the payment of all claims pro rata, and the trust deed before the Court, after negotiation with some of the principal creditors as to who should be the trustees, and as to the payment of this claim, was executed, Mr. Castle assenting to the arrangement on behalf of Aki.

Mr. Castle testifies that at or about the time the deed was executed, His Majesty sent for him and that he met His Majesty at the Bungalow in the Palace grounds, when His Majesty admitted he had received the money and was alone responsible for it.

It is unnecessary for me to go through the testimony as to the reasons why Aki's name was not mentioned in the deed.

What was the position of all parties at the date of the execution of this deed?

His Majesty owed a large amount to various creditors, neither one of whom was in a position to enforce payment.

Aki or his representatives had also a claim which could not be enforced in the Courts, but he had the solemn pledge of His Majesty, publicly made, to cause restitution to be made, and it is to be presumed that the Legislature then in session would have taken some action in the matter whereby Aki or his representatives would have been enabled to obtain satisfaction.

By the execution of the deed, His Majesty's other creditors were placed in a better position, and the plaintiffs in a somewhat worse one, as they had by consenting to the arrangement prevented any action by the Legislature.

It appears to me that under the circumstances the defendants might have well been advised to allow this claim and so have prevented the matter being again agitated, which all parties wished to avoid.

The deed does not purport to be in trust for creditors generally, the first and principal trust being in these words :

"1. The trustees shall receive and examine all existing accounts, bills and claims against the grantor which shall within three months from the date of these presents be presented to them, and shall approve in writing so many and so much claims as shall appear to them or to a majority of them to be correct and just and properly certified, and shall reject all other claims and parts of claims, and at the end of said three months shall make a written statement or list of all such claims as they shall have approved as aforesaid, to which said list they shall thereafter add only such existing claims against the grantor as shall either be authorized by a court of competent jurisdiction, or be shown to their satisfaction to be just and correct."

This seems to me to contemplate the present claim, and in point of fact enables claimants to establish their claims in the Courts, which they would not otherwise be able to do.

The defendants having the discretion to approve claims which should appear to them to be correct and just, and it not appearing that they have exercised such discretion in an improper manner, the complainants are not (as I understood their counsel to concede on the argument) entitled to the relief asked for, of a decree ordering the defendants to approve the claim.

I am of opinion, upon consideration of the evidence and the facts, that the complainants have established their right to have this claim paid pro rata with the other creditors of His Majesty, and that a decree should issue to the following effect :

Declare that the complainants' claim against the defendants for the sum of $71,000 is established as just and correct within the meaning of the deed of trust in the bill mentioned, and that the complainants are entitled to be paid pro rata with other approved claims, and order the defendants to pay the same accordingly out of the moneys which may come to their hands under the trusts of the said deed. If the defendants have paid any dividends on the other claims, they are not to pay any more until the complainants have been paid a dividend equal to

that paid to other complainants. The defendants to pay the complainants' costs, which they may add to their own and retain out of the estate.

A decree will be signed when presented.

### DECISION OF THE FULL COURT.

We have carefully examined the proofs in this case, and fully considered the arguments of counsel, and we are of opinion that the decision of Mr. Justice Preston, rendered on the twenty-first day of September, 1888, should be affirmed. We think it is well established that the moving cause of the trust deed in question was the claim of the plaintiffs, and that the agreement on the part of those representing them, to forbear presenting this claim before the Legislature, on condition that His Majesty should put his property in the hands of trustees for the payment of this claim, is a sufficient consideration, and makes it unnecessary to inquire into its origin.

*A. S. Hartwell* and *W. R. Castle*, for complainants.

*F. M. Hatch* and *Paul Neumann*, for defendants.