**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 17, 2003**

AMCO BUILDERS & DEVELOPERS, INC.,

    Plaintiff/Counter-
    Defendant-Appellant,

v                                     No. 120459

TEAM ACE JOINT VENTURE,

    Defendant/Counter-
    Plaintiff/Cross-
    Defendant,

and

HARTFORD FIRE INSURANCE CO.,

    Defendant/Cross-
    Defendant,

and

ACME DEMOLITION/INTERVALE
JOINT VENTURE,

    Defendant-Appellee,

and

LEROY LOVE doing business
as ACME DEMOLITION CO.,

    Defendant/Counter-
    Plaintiff/Cross-
    Plaintiff,

and

INTERVALE EXCAVATING &
DEMOLITION, INC,

    Defendant/Appellee/
    Cross-Defendant,

and

TEAM CONTRACTING, INC.
AMERICAN CONSTRUCTION & ENERGY,
AND JARVIS PAINTING, INC.,

    Defendants.
_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This case requires us to decide whether the trial court's refusal to set aside a default judgment was an abuse of discretion. Because we find that the trial judge did not abuse his discretion in refusing to set aside the default judgment, we reverse the judgment of the Court of Appeals.

I

This case involves claims for breach of contract and tortious interference with a contractual relationship arising from a construction project of the city of Detroit housing commission.

On November 23, 1998, the circuit court directed

defendants, Acme Demolition/Intervale Joint Venture (Acme/Intervale Joint Venture) and Intervale Excavating & Demolition, Inc. (Intervale), to produce Clarence Carson, the principal of Intervale, for deposition within thirty days. This order was entered only after the trial judge "bent over backwards" for defendants, even providing defense counsel an opportunity to contact Mr. Carson to ensure that he could appear within thirty days. The order provided that "[f]ailure to produce Clarence Carson in conformity with this Order shall subject Defendant to a motion for default judgment."

When defendants Intervale and Acme/Intervale Joint Venture failed to comply with the order, plaintiff filed a motion for default judgment against defendants. At the January 15, 1999, hearing on the motion, defense counsel stated that he had been unable to reach Mr. Carson because of the holidays and the illness of defense counsel's son. He acknowledged that he had "not participated" in discovery and admitted "not having been available to properly represent" defendants. However, he assured the court that communications with his clients had been restored. The court granted the motion for default and the order of default was entered against both defendants on January 27, 1999, for failure to comply with the November 23, 1998, order.

Both defendants moved to set aside the default on

3

February 12, 1999.  Although defendants' attorney assumed responsibility for the delay, the motion was denied on March 12, 1999, because the court found that neither defendant demonstrated good cause to set aside the default.

Default judgment in the amount of $595,606.15 was entered against only Intervale when defense counsel did not appear for the March 18, 1999, hearing on the issue of damages.[1]

New counsel for defendant moved to set aside the default entry against both Intervale and Acme/Intervale Joint Venture, as well as the default judgment against Intervale, claiming that Mr. Carson was not aware that the court had ordered his production for deposition.  The court denied the motion at a hearing on April 30, 1999, because it had "bent over backwards . . . making sure that . . . [prior defense counsel] had the okay from his clients that they would be produced for deposition within the period of time."  The circuit court was not satisfied that good cause for setting aside the default and the default judgment was presented.  The order denying the motion was entered on May 5, 1999.

---

[1] Apparently, there was some confusion whether defense counsel was representing both Acme/Intervale Joint Venture and Intervale.  At the March 18, 1999, hearing, counsel for plaintiff stated that although default had been entered against both Acme/Intervale Joint Venture and Intervale she was proceeding only against Intervale.  For the remainder of this opinion, "defendant" refers to defendant Intervale Excavating & Demolition, Inc.

Defendant appealed both the entry of default judgment and the denial of the motion to set aside the default and the default judgment. The Court of Appeals reversed in a two-to-one unpublished opinion per curiam.[2] Finding that the actions of defense counsel constituted abandonment, the majority opined that there was good cause for setting aside the default and the default judgment. The Court of Appeals majority held that the trial court abused its discretion in refusing to set aside the default judgment. The dissenting judge concluded that the level of deference precludes reversal in this case; he found that the refusal to set aside the default and the default judgment was not an abuse of discretion.

Plaintiff appealed the Court of Appeals reversal of the trial court's denial of defendant's motion to set aside the default judgment. This Court granted plaintiff's application for leave to appeal. 467 Mich 896 (2002).

II

This Court reviews a trial court's refusal to set aside a default or default judgment for an abuse of discretion. *Zaiter v Riverfront Complex, Ltd*, 463 Mich 544, 552; 620 NW2d 646 (2001); *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999). As we recently reiterated

---

[2]Unpublished opinion per curiam, issued November 2, 2001 (Docket No. 221513).

5

in *Alken-Ziegler*:

>    The ruling on a motion to set aside a default or a default judgment is entrusted to the discretion of the trial court.  Where there has been a valid exercise of discretion, appellate review is sharply limited.  Unless there has been a clear abuse of discretion, a trial court's ruling will not be set aside.

>                         * * *

>    This Court historically has cautioned appellate courts not to substitute their judgment in matters falling within the discretion of the trial court, and has insisted upon deference to the trial court in such matters.  For example, the Court stated in *Scripps v Reilly*, 35 Mich 371, 387 (1877):

>    "It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate court will not re-examine.  It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been."

>                         * * *

>    Moreover, although the law favors the determination of claims on the merits, it has also been said that the policy of this state is generally against setting aside defaults and default judgments that have been properly entered. [*Alken-Ziegler* at 227-229 (citations omitted).]

## III

The setting aside of a default or default judgment is governed by MCR 2.603(D)(1), which provides:

>    A motion to set aside a default or a default judgment, except when grounded on lack of

6

jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

Plaintiff has not challenged defendant's affidavit of meritorious defense; therefore, the trial court only examined whether there was good cause to set aside the default and default judgment. To show "good cause," a party may establish "'(1) a substantial defect or irregularity in the proceeding upon which the default was based,'" or "'(2) a reasonable excuse for failure to comply with the requirements which created the default . . . .'" *Alken-Ziegler* at 230 (citation omitted).

Defendant asserts that there is good cause for setting aside the default and the default judgment because the actions of  prior defense counsel constituted abandonment. While, generally, an attorney's negligence is attributable to that attorney's client, abandonment by counsel has been held to constitute good cause for setting aside a default or default judgment. *White v Sadler*, 350 Mich 511, 523-524; 87 NW2d 192 (1957). In *White,* this Court recognized that a default judgment may be set aside on the basis of abandonment or withdrawal by an attorney:

> We find no ALR annotation squarely on the point of the negligence of an attorney as a ground for opening or vacating a default judgment, but we do find one on the abandonment of or withdrawal from a case by an attorney as such a ground (114 ALR 279). That annotation has this revealing

7

passage on page 280:

> "An attorney's negligence or mistake is distinguishable, as regards the right to reopen a default judgment, from his abandonment of the case, which may be in effect a fraud on his client. So that from the mere fact that the attorney's negligence may be imputable to his client and prevent the latter from relying on that ground for vacating or opening a default judgment, it does not necessarily follow that the same rule will apply in the event of the attorney's abandonment of the case. It is said in 15 RCL (Perm Supp ed), Judgments, § 161, p 711: 'In some jurisdictions the negligence or mistake of an attorney is not imputable to his client, and does not debar him from obtaining relief from a judgment due thereto, but the decisions in most of the States are to the effect that the neglect or mistake of an attorney or agent must be treated as that of his principal, and hence whenever the mistake, negligence or inadvertence relied upon is of so gross a character that it would not have entitled the party to relief had it been his own, it is equally unavailable to procure him relief when attributable to his attorney.'" [*Id.*]

In this case, the circuit court examined the actions of the prior defense counsel and refused to set aside the default and the default judgment.

Defendant argued that the default and the default judgment should be set aside because Mr. Carson did not have knowledge that the trial court ordered him to appear for deposition, nor did he have knowledge that default had been entered. Defendant asserts Mr. Carson's lack of knowledge was the result of prior counsel's abandonment. Mr. Carson signed an affidavit dated April 22, 1999. The affidavit stated, in part, that before April 14, 1999, Mr. Carson was not advised

8

that any party was attempting to depose him, nor was he advised that the court had entered an order compelling his appearance for deposition or that default and default judgment had been entered.

The Court of Appeals majority relied, in part, on this affidavit to conclude that the trial judge abused his discretion in refusing to set aside the default judgment. The affidavit and statements by prior counsel that he failed to properly represent his clients convinced the Court of Appeals majority that prior counsel abandoned the representation.

However, the Court of Appeals is obliged to review a trial court's ruling on a motion to set aside a default or default judgment for an abuse of discretion. *Zaiter* at 552; *Alken-Ziegler* at 227. Although the Court of Appeals majority correctly identified this as the standard of review, it impermissibly substituted its own judgment for that of the trial court.

There is significant evidence in the record from which the trial judge could conclude that defendant was not abandoned by prior counsel. At the April 30, 1999, hearing, the trial judge stated that despite prior counsel's son's medical problems, prior counsel continued to represent defendants and "was here most of the time with regard to this case." The trial judge also stated that he "bent over

9

backwards" to assure that prior counsel "had the okay from his clients that they would be produced for deposition within the period of time."  Before entering the order compelling production of Mr. Carson, the trial judge apparently provided prior counsel with an opportunity to contact Mr. Carson to ensure that he could appear for a deposition within thirty days.  Prior counsel assured the court that the order was "okay."

Further, on February 3, 1999, Mr. Carson signed an affidavit entitled "Affidavit of Intervale Excavating & Demolition, Inc, in Support of Motion to Set Aside Default Entry."  At the least, this proves that Mr. Carson and prior counsel had contact regarding the case after the default was entered, but before the date Mr. Carson claims he became aware that the default had been entered.  Moreover, in response to defendants' argument below that Mr. Carson lacked knowledge of significant aspects of the case, the trial court stated that it recalled being told by prior counsel that he was in communication with his clients.

The trial judge examined all the evidence regarding prior counsel's representation and determined that prior counsel did not abandon the representation; therefore, defendant had not presented good cause for setting aside the default and the default judgment.  In light of the evidence in the record and

10

the trial judge's reasoned decision based on that evidence we cannot conclude that the trial court's refusal to set aside the default judgment was an abuse of discretion.

## IV

We agree with plaintiff and the dissenting Court of Appeals judge that the Court of Appeals majority failed to accord the circuit court's ruling the deference it was due and, thus, we reverse the ruling of the Court of Appeals.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Stephen J. Markman

# S T A T E   O F   M I C H I G A N

## SUPREME COURT


AMCO BUILDERS & DEVELOPERS, INC,

    Plaintiff/Counter-
    Defendant-Appellant,

v                                   No. 120459

TEAM ACE JOINT VENTURE,

    Defendant/Counter-
    Plaintiff/Cross-
    Defendant,

and

HARTFORD FIRE INSURANCE CO,

    Defendant/Cross-
    Defendant,

and

ACME DEMOLITION/INTERVALE
JOINT VENTURE,

    Defendant-Appellee,

and

LEROY LOVE doing business as ACME
DEMOLITION CO,

    Defendant/Counter-
    Plaintiff/Cross
    Plaintiff,

and

**INTERVALE EXCAVATING & DEMOLITION, INC,**

Defendant-Appellee/
Cross-Defendant,

and

**TEAM CONTRACTING, INC, et al,**

Defendants

_____

YOUNG, J. (*concurring*).

I agree with the majority that the trial court's decision to deny defendant's motion to set aside the default judgment was not an abuse of discretion and, thus, the judgment of the Court of Appeals should be reversed. However, I conclude that, in civil cases, abandonment satisfies the "good cause" requirement to set aside a default judgment only when principles of agency would avoid imputation of the attorney's negligent omissions to the client.[3]

_____

[3]Because criminal representations implicate constitutional concerns regarding the adequacy of a defendant's representation, my analysis is confined to civil representations only. See Const 1963, art 1, § 20 ("In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ."). See also *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994)(setting forth the standard for effective assistance of counsel); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996)("The right to counsel also encompasses the right to the effective assistance of counsel.").

As an initial matter, I do not believe that *White v Sadler,* 350 Mich 511; 87 NW2d 192 (1957)*,* recognized abandonment, in and of itself, as a ground for setting aside a default judgment. Citing a singular authority, and in dicta, the *White* Court recognized a *potential* difference between neglect and abandonment, and suggested the possibility that abandonment may be a basis for setting aside a default judgment:

> "An attorney's negligence or mistake is distinguishable, as regards the right to reopen a default judgment, from his abandonment of the case, which may be in effect a fraud on his client. So that from the mere fact that the attorney's negligence may be imputable to his client and prevent the latter from relying on that ground for vacating or opening a default judgment, it does not necessarily follow that the same rule will apply in the event of the attorney's abandonment of the case." [*Id.* at 523, quoting anno: *Abandonment of or withdrawal from case by attorney as ground for opening or setting aside judgment by default*, 114 ALR 279, 280.]

On the basis of this brief, shallowly rooted *suggestion* that abandonment may be a ground for setting aside a default judgment, subsequent courts cited *White* for the proposition that there is, in fact, a dispositive distinction between neglect and abandonment. See, e.g., *Pascoe v Sova*, 209 Mich App 297, 300; 530 NW2d 781 (1995)("Similarly, in *White*, *supra*, the Supreme Court recognized a distinction between negligent

legal representation and abandonment of representation altogether."). As a result, post-*White* courts have concluded that abandonment is not to be imputed to the client, whereas ordinary neglect is to be imputed. See, e.g., *Coburn v Coburn*, 230 Mich App 118, 128; 583 NW2d 490 (1998)("Because the client properly may be burdened with the consequences of counsel's improprieties short of abandoning the representation, [*White, supra* at 522-523], adversely affected parties and their attorneys have no one to blame but themselves if an appeal is dismissed on this basis.").

Although *White* recognized a potential distinction between neglect and abandonment, it did not adopt the distinction, nor did it conclude that abandonment per se is a proper basis on which to set aside a default judgment. To the contrary, *White*, in dicta, and in reliance on a single ALR citation,[4]

_____

[4]I note that the ALR to which *White* cites, 114 ALR 279, suggests that abandonment can be tantamount to fraud on the client.

"Fraud" is generally defined as "all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another . . . ." *General Electric Credit Corp v Wolverine Ins Co*, 420 Mich 176, 189; 362 NW2d 595 (1984)(quoting 37 CJS, Fraud, § 1, p 204). "Fraud" encompasses both actual fraud–an intentional perversion of the truth–and constructive fraud–an act of deception or a misrepresentation without an evil intent. *General Electric Credit Corp, supra* at 188-189. Furthermore, "fraud" may be committed by open false assertions or by suppressing facts, i.e., silent fraud. *Hord v Environmental*
(continued...)

4

merely notes that *if* the offending attorney's conduct constituted abandonment, the distinction *may* be important. *White, supra* at 523. The *White* Court offered no further discussion, nor did it decide whether abandonment is an appropriate ground for setting aside a default judgment.

Accordingly, in light of the limited value of *White's* discussion of a potential distinction between neglect and abandonment, I am unpersuaded that *White* stands for the proposition that abandonment automatically satisfies the "good cause" element required to set aside a default or default judgment under MCR 2.603(D)(1).

That said, in *Loree v Reeves*, 2 Mich 133 (1851), this

---

[4](...continued)
*Research Institute of Michigan* (*After Remand*), 463 Mich 399, 412; 617 NW2d 543 (2000), quoting *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 125; 313 NW2d 77 (1981). In the case of silent fraud, mere nondisclosure of facts is insufficient. *Hord, supra* at 412. Rather, there must be circumstances that establish a legal duty to make the disclosure. *Id.* In the case of agency, "[a]n agent who acquires information relevant to matters within his province and of which he should know the principal would want to know, has a duty to reveal it, unless it was received confidentially." Seavy, Agency (1964), Duties of Care and Obedience, § 143, p 238.

Accordingly, it is not enough to say that "abandonment" constitutes a fraud on the client. Rather, consistent with the definition of fraud and the principles of agency, the court must identify a specific circumstance, such as an intentional perversion of the truth or the failure to reveal information in accordance with the agent's duty, to conclude that the attorney's misconduct constitutes a fraud on the client.

5

Court considered whether to set aside a default charged against a client whose attorney had abandoned the representation. The defendant, a New York resident who was the object of a suit in Michigan for indebtedness, retained an attorney to represent him. The attorney, however, neither appeared on the defendant's behalf nor interposed a defense. Rather, the attorney completely abandoned the defendant's representation. Consequently, the trial court entered a default judgment against the defendant.

This Court set aside the default and ordered a new trial in *Loree*.[5]  The Court reasoned:

> "[The client] was prompt in taking the necessary steps to employ an attorney, and he had no right to suppose that the attorney he did retain, and in time to have attended to the suit, and to whom he confidently confided the preparation and management of his defense, would abandon his case and suffer judgment to be taken against him by default . . . [the client] was authorized to believe that his attorney would appear and plead for him, and apprise him of the nature of the issue joined in

---

[5]In doing so, the Court exercised its general authority to grant a new trial in the interest of justice:

> Courts of record are vested with general discretionary power, on the subject of granting new trials; yet this discretionary power is judicial, and not arbitrary, and should always be exercised by Courts with great care in moulding their decisions on applications for new trials, in view of the peculiar circumstances connected with each case, so as to subserve the purposes of substantial justice, and in protecting at the same time, the just and equitable rights of both parties. [*Id.* at 134.]

6

the cause, and the time when the same would be brought to trial." [*Id.* at 136.]

The Court further reasoned:

"It is contended on the part of the plaintiff, that if the defendant has lost his defense to the suit by the negligence or improper conduct of his attorney, he should be compelled to seek redress by action against the attorney. But he should not be required to pursue this course, *if the remedy in the end, would be either doubtful or inadequate*." [*Id.* at 137 (emphasis added).]

*Loree* arguably supports the proposition that abandonment can be a ground to set aside a default judgment. Notably, however, the *Loree* Court failed to explain why the rules of agency, which traditionally govern much of the attorney-client relationship, should not govern even in the case of abandonment. In my opinion, this is a weakness in the analysis in *Loree*. Additionally, although legal-malpractice actions in civil cases were thought to provide an inadequate remedy in the mid-nineteenth century, surely no twenty-first century court would so conclude. Accordingly, I would limit *Loree* to those cases in which there is no legal remedy against the offending attorney.

II

I believe that abandonment satisfies the "good cause" requirement to set aside a default judgment only when the principles of agency would avoid imputation of the attorney's negligence to the client.

7

The attorney-client relationship is generally governed by principles of agency. *Detroit v Whittemore*, 27 Mich 281, 286 (1873)("The employment of counsel does not differ in its incidents, or in the rules which govern it, from the employment of an agent in any other capacity or business."); *Katz v Kowalsky*, 296 Mich 164, 174; 295 NW 600 (1941)(applying principles of agency to the attorney-client relationship); *Olitkowski v St Casimir's S&L Ass'n*, 302 Mich 303, 309-310; 4 NW2d 664 (1942)(applying principles of agency to the attorney-client relationship); *Friedman v Dozorc*, 412 Mich 1, 75; 312 NW2d 585 (1981)("Attorneys are the agents who provide the necessary expertise for clients who wish to litigate their rightful claims."); *Fletcher v Fractional No 5 School Dist Bd of Ed*, 323 Mich 343, 348; 35 NW2d 177 (1948)("In a legal sense, an attorney at law often acts as an agent or representative.").

Accordingly, in civil cases, a client is bound by an attorney's actions and inactions as long as the attorney's conduct was within the scope of the attorney's authority. See *Everett v Everett*, 319 Mich 475, 482; 29 NW2d 919 (1947), quoting *Jones v Leech*, 46 Iowa 186, 187 (1877)("'The law regards the neglect of an attorney as the client's own neglect and will give no relief from the consequences thereof.'"); *White, supra* at 522 (in Michigan, an attorney's neglect is

generally attributable to his client); *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 224; 600 NW2d 638 (1999)("A party is responsible for any action or inaction by the party or the party's agent."). See also *Prate v Freedman*, 583 F2d 42, 48 (CA 2, 1978)("In our legal system, an attorney is his client's agent and representative . . . . Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority.").

Applying this principle, I believe that whether "abandonment" relieves the client of liability is properly resolved by determining whether the attorney was acting within the scope of the attorney's authority.  If the attorney was acting within the scope of the authority granted by the client, the client remains liable for the attorney's inactions, and "abandonment" is not a sufficient ground to set aside the default or default judgment under MCR 2.603(D)(1).

### III

This conclusion is consistent with the analysis employed in several foreign jurisdictions. In *Bailey v Algonquin Gas Transmission Co*, 788 A2d 478, 483-485 (RI, 2002), the Rhode Island Supreme Court concluded that an attorney's failure to respond to discovery requests was an insufficient basis on which to set aside a default judgment. The court reasoned:

> In this case . . . there is no evidence that [the client] attempted to terminate its agency

9

> relationship with [the offending attorney] before the entry of the default judgment. Indeed, it was not until [the client] received an execution on the judgment that it took any action in this regard. . . .

> \* \* \*

> [The client] contends that the motion justice overlooked the stipulation that it was not negligent in this case, and that, through no fault of its own, it was misled by its grossly negligent attorney. This argument, however, fails to recognize the "fundamental of agency law which imputes the neglect of an attorney in professional matters to his client and considers the omissions of the attorney as though they were the neglect of the client himself." That fundamental law of agency does not mutate merely because the viral strain of legal misconduct in a particular case has become so virulent as to constitute "gross" negligence. [*Id.* (citations omitted).]

See also *Panzino v Phoenix*, 196 Ariz 442; 999 P2d 198 (2000).

I find Rhode Island's analysis persuasive, and would similarly conclude that abandonment, standing alone, is an insufficient reason to deviate from the principles of agency. Regarding the "injustice" of allowing a client to suffer the consequences of the attorney's actions, I find the United States Supreme Court's statement in *Link v Wabash R Co*, 370 US 626, 633-634; 82 S Ct 1386; 8 L Ed 2d 734 (1962), compelling:

> There is certainly no merit in the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ."

10

Accordingly, I would conclude that abandonment is not a proper ground on which to set aside a default or a default judgment in the absence of a circumstance that would release the client from liability for the attorney's actions under agency principles.

I am empathetic to clients who must suffer the consequences of a default judgment as a result of their attorneys' failure to act with diligence and promptness. However, these clients are not without a remedy. Clients who suffer damages as a result of attorneys' misconduct may also pursue claims of legal malpractice, through which they can be made whole again. In addition, attorneys who fail to act with reasonable diligence and promptness are subject to disciplinary action for violating the Rules of Professional Conduct. MRPC 1.3. Attorneys are also subject to discipline for failing to keep a client reasonably informed. MRPC 1.4.

IV

In sum, I believe that abandonment satisfies the "good cause" requirement to set aside a default or default judgment under MCR 2.603(D)(1) only when principles of agency would not impute the attorney's negligent omissions to the client.

Robert P. Young, Jr.
Maura D. Corrigan
Clifford W. Taylor

11