Young, J.
(concurring). I agree with the majority that the trial court’s decision to deny defendant’s motion to set aside the default judgment was not an abuse of discretion and, thus, the judgment of the Court of Appeals should be reversed. However, I conclude that, in civil cases, abandonment satisfies the “good cause” requirement to set aside a default judgment only when principles of agency would avoid imputation of the attorney’s negligent omissions to the client.[1]
I
As an initial matter, I do not believe that White v Sadler, 350 Mich 511; 87 NW2d 192 (1957), recognized abandonment, in and of itself, as a ground for setting aside a default judgment. Citing a singular authority, *100 and in dicta, the White Court recognized a potential difference between neglect and abandonment, and suggested the possibility that abandonment may be a basis for setting aside a default judgment:
“An attorney’s negligence or mistake is distinguishable, as regards the right to reopen a default judgment, from his abandonment of the case, which may be in effect a fraud on his client. So that from the mere fact that the attorney’s negligence may be imputable to his client and prevent the latter from relying on that ground for vacating or opening a default judgment, it does not necessarily follow that the same rule will apply in the event of the attorney’s abandonment of the case.” [Id. at 523, quoting anno: Abandonment of or withdrawal from case by attorney as ground for opening or setting aside judgment by default, 114 ALR 279, 280.]
On the basis of this brief, shallowly rooted suggestion that abandonment may be a ground for setting aside a default judgment, subsequent courts cited White for the proposition that there is, in fact, a dispositive distinction between neglect and abandonment. See, e.g., Pascoe v Sova, 209 Mich App 297, 300; 530 NW2d 781 (1995) (“Similarly, in White, supra, the Supreme Court recognized a distinction between negligent legal representation and abandonment of representation altogether.”). As a result, post-WMie courts have concluded that abandonment is not to be imputed to the client, whereas ordinary neglect is to be imputed. See, e.g., Cobum v Cobum, 230 Mich App 118, 128; 583 NW2d 490 (1998) (“Because the client properly may be burdened with the consequences of counsel’s improprieties short of abandoning the representation, [White, supra at 522-523], adversely affected parties and their attorneys have no one to blame but themselves if an appeal is dismissed on this basis.”).
*101 Although White recognized a potential distinction between neglect and abandonment, it did not adopt the distinction, nor did it conclude that abandonment per se is a proper basis on which to set aside a default judgment. To the contrary, White, in dicta, and in reliance on a single ALR citation,[2] merely notes that if the offending attorney’s conduct constituted abandonment, the distinction may be important. White, supra at 523. The White Court offered no further discussion, nor did it decide whether abandonment is an appropriate ground for setting aside a default judgment.
Accordingly, in light of the limited value of White’s discussion of a potential distinction between neglect *102 and abandonment, I am unpersuaded that White stands for the proposition that abandonment automatically satisfies the “good cause” element required to set aside a default or default judgment under MCR 2.603(D)(1).
That said, in Loree v Reeves, 2 Mich 133 (1851), this Court considered whether to set aside a default charged against a client whose attorney had abandoned the representation. The defendant, a New York resident who was the object of a suit in Michigan for indebtedness, retained an attorney to represent him. The attorney, however, neither appeared on the defendant’s behalf nor intexposed a defense. Rather, the attorney completely abandoned the defendant’s representation. Consequently, the trial court entered a default judgment against the defendant.
This Court set aside the default and ordered a new trial in Loree.[3] The Court reasoned:
[The client] was prompt in taking the necessary steps to employ an attorney, and he had no right to suppose that the attorney he did retain, and in time to have attended to the suit, and to whom he confidently confided the preparation and management of his defense, would abandon his case and suffer judgment to be taken against him by default. . . [the client] was authorized to believe that his attorney *103 would appear and plead for him, and apprise him of the nature of the issue joined in the cause, and the time when the same would be brought to trial. [Id. at 136.]
The Court further reasoned:
It is contended on the part of the plaintiff, that if the defendant has lost his defense to the suit by the negligence or improper conduct of his attorney, he should be compelled to seek redress by action against the attorney. But he should not be required to pursue this course, if the remedy in the end, would be either doubtful or inadequate. [Id. at 137 (emphasis added).]
Loree arguably supports the proposition that abandonment can be a ground to set aside a default judgment. Notably, however, the Loree Court failed to explain why the rules of agency, which traditionally govern much of the attorney-client relationship, should not govern even in the case of abandonment. In my opinion, this is a weakness in the analysis in Loree. Additionally, although legal-malpractice actions in civil cases were thought to provide an inadequate remedy in the mid-nineteenth century, surely no twenty-first century court would so conclude. Accordingly, I would limit Loree to those cases in which there is no legal remedy against the offending attorney.
II
I believe that abandonment satisfies the “good cause” requirement to set aside a default judgment only when the principles of agency would avoid imputation of the attorney’s negligence to the client.
The attorney-client relationship is generally governed by principles of agency. Detroit v Whittemore, *104 27 Mich 281, 286 (1873) (“The employment of counsel does not differ in its incidents, or in the rules which govern it, from the employment of an agent in any other capacity or business.”); Katz v Kowalsky, 296 Mich 164, 174; 295 NW 600 (1941) (applying principles of agency to the attorney-client relationship); Olitkowski v St Casimir’s S & L Ass’n, 302 Mich 303, 309-310; 4 NW2d 664 (1942) (applying principles of agency to the attorney-client relationship); Friedman v Dozorc, 412 Mich 1, 75; 312 NW2d 585 (1981) (“Attorneys are the agents who provide the necessary expertise for clients who wish to litigate their rightful claims.”); Fletcher v Fractional No 5 School Dist Bd of Ed, 323 Mich 343, 348; 35 NW2d 177 (1948) (“In a legal sense, an attorney at law often acts as an agent or representative.”).
Accordingly, in civil cases, a client is bound by an attorney’s actions and inactions as long as the attorney’s conduct was within the scope of the attorney’s authority. See Everett v Everett, 319 Mich 475, 482; 29 NW2d 919 (1947), quoting Jones v Leech, 46 Iowa 186, 187 (1877) (“ ‘The law regards the neglect of an attorney as the client’s own neglect and will give no relief from the consequences thereof.’ ”); White, supra at 522 (in Michigan, an attorney’s neglect is generally attributable to his client); Alken-Ziegler, Inc v Waterbury Headers Corp, 461 Mich 219, 224; 600 NW2d 638 (1999) (“A party is responsible for any action or inaction by the party or the party’s agent.”). See also Prate v Freedman, 583 F2d 42, 48 (CA 2, 1978) (“In our legal system, an attorney is his client’s agent and representative .... Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority.”).
*105 Applying this principle, I believe that whether “abandonment” relieves the client of liability is properly resolved by determining whether the attorney was acting within the scope of the attorney’s authority. If the attorney was acting within the scope of the authority granted by the client, the client remains liable for the attorney’s inactions, and “abandonment” is not a sufficient ground to set aside the default or default judgment under MCE 2.603(D)(1).
III
This conclusion is consistent with the analysis employed in several foreign jurisdictions. In Bailey v Algonquin Gas Transmission Co, 788 A2d 478, 483-485 (RI, 2002), the Rhode Island Supreme Court concluded that an attorney’s failure to respond to discovery requests was an insufficient basis on which to set aside a default judgment. The court reasoned:
In this case . . . there is no evidence that [the client] attempted to terminate its agency relationship with [the offending attorney] before the entry of the default judgment. Indeed, it was not until [the client] received an execution on the judgment that it took any action in this regard. ...
[The client] contends that the motion justice overlooked the stipulation that it was not negligent in this case, and that, through no fault of its own, it was misled by its grossly negligent attorney. This argument, however, fails to recognize the “fundamental of agency law which imputes the neglect of an attorney in professional matters to his client and considers the omissions of the attorney as though they were the neglect of the client himself.” That fundamental law of agency does not mutate merely because the viral *106 strain of legal misconduct in a particular case has become so virulent as to constitute “gross” negligence. [Id. (citations omitted).]
See also Panzino v Phoenix, 196 Ariz 442; 999 P2d 198 (2000).
I find Rhode Island’s analysis persuasive, and would similarly conclude that abandonment, standing alone, is an insufficient reason to deviate from the principles of agency. Regarding the “injustice” of allowing a client to suffer the consequences of the attorney’s actions, I find the United States Supreme Court’s statement in Link v Wabash R Co, 370 US 626, 633-634; 82 S Ct 1386; 8 L Ed 2d 734 (1962), compelling:
There is certainly no merit in the contention that dismissal of petitioner’s claim because of his counsel’s unexcused conduct imposes an unjust penally on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent....
Accordingly, I would conclude that abandonment is not a proper ground on which to set aside a default or a default judgment in the absence of a circumstance that would release the client from liability for the attorney’s actions under agency principles.
I am empathetic to clients who must suffer the consequences of a default judgment as a result of their attorneys’ failure to act with diligence and promptness. However, these clients are not without a remedy. Clients who suffer damages as a result of attorneys’ misconduct may also pursue claims of legal *107 malpractice, through which they can be made whole again. In addition, attorneys who fail to act with reasonable diligence and promptness are subject to disciplinary action for violating the Rules of Professional Conduct. MRPC 1.3. Attorneys are also subject to discipline for failing to keep a client reasonably informed. MRPC 1.4.
IV
In sum, I believe that abandonment satisfies the “good cause” requirement to set aside a default or default judgment under MCR 2.603(D)(1) only when principles of agency would not impute the attorney’s negligent omissions to the client.
Corrigan, C.J., and Taylor, J., concurred with Young, J.

 Because criminal representations implicate constitutional concerns regarding the adequacy of a defendant’s representation, my analysis is confined to civil representations only. See Const 1963, art 1, § 20 (“In every criminal prosecution, the accused shall have the right... to have the assistance of counsel for his or her defense . . . .”). See also People v Pickens, 446 Mich 298, 338; 521 NW2d 797 (1994) (setting forth the standard for effective assistance of counsel); People v Pubrat, 451 Mich 589, 594; 548 NW2d 595 (1996) (“The right to counsel also encompasses the right to the effective assistance of counsel.”).

 I note that the ALR to which White cites, 114 ALR 279, suggests that abandonment can be tantamount to fraud on the client.
“Fraud” is generally defined as “all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or uneonscientious advantage of another ....” Gen Electric Credit Corp v Wolverine Ins Co, 420 Mich 176, 189; 362 NW2d 595 (1984) (quoting 37 CJS, Fraud, § 1, p 204). “Fraud” encompasses both actual fraud-an intentional perversion of the truth-and constructive fraud-an act of deception or a misrepresentation without an evil intent. Gen Electric Credit Corp, supra at 188-189. Furthermore, “fraud” may be committed by open false assertions or by suppressing facts, i.e., silent fraud. Hord v Environmental Research Institute of Michigan (After Remand), 463 Mich 399, 412; 617 NW2d 543 (2000), quoting United States Fidelity & Guaranty Co v Black, 412 Mich 99, 125; 313 NW2d 77 (1981). In the case of silent fraud, mere nondisclosure of facts is insufficient. Hord, supra at 412. Rather, there must be circumstances that establish a legal duty to make the disclosure. Id. In the case of agency, “[a]n agent who acquires information relevant to matters within his province and of which he should know the principal would want to know, has a duty to reveal it, unless it was received confidentially.” Seavy, Agency (1964), Duties of Care and Obedience, § 143, p 238.
Accordingly, it is not enough to say that “abandonment” constitutes a fraud on the client. Rather, consistent with the definition of fraud and the principles of agency, the court must identify a specific circumstance, such as an intentional perversion of the truth or the failure to reveal information in accordance with the agent’s duty, to conclude that the attorney’s misconduct constitutes a fraud on the client.

 In doing so, the Court exercised its general authority to grant a new trial in the interest of justice:
Courts of record are vested with general discretionary power, on the subject of granting new trials; yet this discretionary power is judicial, and not arbitrary, and should always be exercised by Courts with great care in moulding their decisions on applications for new trials, in view of the peculiar circumstances connected with each case, so as to subserve the purposes of substantial justice, and in protecting at the same time, the just and equitable rights of both parties. [Id. at 134]