ALKEN-ZIEGLER, INC v WATERBURY HEADERS CORPORATION

Docket No. 111783. Decided October 12, 1999. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

Alken-Ziegler, Inc., brought an action in the Kalkaska Circuit Court against Waterbury Headers, Inc., alleging breach of contract. Upon learning that Waterbury Headers, Inc., had sold substantial assets to a company called Waterbury Headers Corporation, Alken-Ziegler amended its complaint, naming that company as a defendant on a theory of successor liability. The resident agent was served, and, when the deadline to file a reply under MCR 2.108(A)(2) passed and there was no answer, a default was entered. Following a hearing on damages, the court, Alton F. Davis, J., awarded the plaintiff $337,453.93. Subsequently, the court denied Waterbury Headers Corporation's motion to set aside the default. The Court of Appeals, MARKEY, P.J., and D. E. HOLBROOK JR., and NEFF, JJ., reversed in an unpublished opinion per curiam (Docket No. 200042). The plaintiff seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The circuit court did not abuse its discretion in refusing to set aside the default.

1. Under MCR 2.603(D), a motion to set aside a default or a default judgment is to be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed. Good cause means a substantial irregularity or defect in the proceeding upon which the default is based, a reasonable excuse for failure to comply with the requirements that created the default, or that manifest injustice would result if the default is not set aside.

2. The ruling on a motion to set aside a default or a default judgment is entrusted to the discretion of the trial court. Where there has been a valid exercise of discretion, appellate review is sharply limited. Unless there has been a clear abuse of discretion, a trial court's ruling will not be set aside. In this case the Court of Appeals failed to accord the circuit court's ruling the deference it was due. The Court of Appeals blurred the separate requirements of "good cause" and "meritorious defense" under MCR 2.603(D)(1).

That rule requires a party seeking to set aside a default or a default judgment to demonstrate good cause and to file an affidavit showing a meritorious defense. Relying on prior decisions, the Court of Appeals said that a party may establish good cause by showing a substantial procedural irregularity or defect, a reasonable excuse for failure to comply with the requirements that created the default, or some other reason why a manifest injustice would result if the default judgment were not set aside. It then found a manifest injustice, partly on the basis that the plaintiff had put forth a potentially meritorious defense. However, this reflects a misunderstanding of the separate nature of the requirements under MCR 2.603(D)(1).

3. MCR 2.603(D)(1) and its predecessor state only that a party seeking to set aside a default or a default judgment must both file an affidavit of meritorious defense and show good cause. Properly viewed, manifest injustice is not a discrete occurrence such as a procedural defect or a tardy filing that can be assessed independently. Rather, it is the result that would occur if a default were to be allowed to stand where a party has satisfied the meritorious-defense and good-cause requirements of the court rule. When a party puts forth a meritorious defense and then attempts to satisfy good cause by showing a procedural irregularity or defect, or a reasonable excuse for failure to comply with the requirements that created the default, the strength of the defense obviously will affect the "good cause" showing that is necessary, i.e., if a party states a meritorious defense that would be absolute if proven, a lesser showing of good cause will be required than if the defense were weaker, in order to prevent a manifest injustice.

Reversed.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*) for the plaintiff-appellant.

*Dingeman, Dancer & Christopherson, P.L.C.* (by *Mark R. Dancer* and *Michael J. Daray*), for the defendant-appellee.

PER CURIAM. We must decide in this contract action whether the circuit court abused its discretion in denying the motion by defendant Waterbury Headers Corporation to set aside the default entered because of its failure to respond to the plaintiff's summons

and complaint. We hold that the circuit court did not abuse its discretion, and we thus reverse the judgment of the Court of Appeals.

I

Plaintiff Alken-Ziegler, Inc., manufactures cold-formed steel products at its factory in Kalkaska. In May 1991, the plaintiff contracted with Waterbury Headers, Inc., of Connecticut to convert one of the plaintiff's machines so that it could make a different type of product. The plaintiff paid the contract price, but a dispute arose regarding whether the machine had been properly converted.

In May 1994, the plaintiff filed suit in Kalkaska Circuit Court against Waterbury Headers, Inc. (Waterbury #1). Waterbury #1 sought summary disposition on the basis that the circuit court lacked jurisdiction. The circuit court denied summary disposition, and the Court of Appeals denied Waterbury #1's application for leave to appeal, for failure to persuade the court of the need for immediate appellate review.[1]

In the meantime, having learned that Waterbury #1 had sold substantial assets to a New York company called Waterbury Headers Corporation (Waterbury #2), the plaintiff filed an amended complaint in March 1996 that named Waterbury #2 as a defendant on a theory of successor liability. The resident agent for Waterbury #2 was served with the summons and complaint by registered mail at the beginning of April 1996.

---

[1] Unpublished order, entered July 29, 1996 (Docket No. 191154).

The deadline for Waterbury #2 to file a reply under MCR 2.108(A)(2) was the first of May 1996. When no answer arrived, the plaintiff requested that Waterbury #2 be defaulted pursuant to MCR 2.603(A)(1). The default was entered by the court clerk about three weeks later.

The plaintiff then requested a default judgment under MCR 2.603(B), and the matter was scheduled for an early July 1996 hearing to determine damages. No defendant appeared at the hearing, but the court took testimony from the plaintiff's president and chief operating officer concerning damages. At the conclusion of the hearing, the court approved an award of $337,453.93, and directed the plaintiff's counsel to prepare an order.

In mid-July 1996, Waterbury #2 moved to set aside the default. Waterbury #2 also objected to the proposed order of default judgment. It submitted affidavits from its president and from the chairman of the board of Waterbury #1.

In his affidavit, the Waterbury #2 president stated that upon receiving the plaintiff's summons and complaint, he had contacted the board chairman of Waterbury #1 about providing defense and indemnification, as agreed upon between Waterbury #1 and Waterbury #2 under their asset-purchase agreement. According to Waterbury #2, the board chairman promised to take care of the matter.

In his affidavit, the board chairman of Waterbury #1 acknowledged that he had been contacted by Waterbury #2, and that he had promised to retain counsel to provide Waterbury #2 with a defense. He said that because of his travel schedule he did not advise

Waterbury #1's counsel of the conversation, but assumed that counsel would respond.

The circuit court heard argument in early September 1996 on Waterbury #2's motion to set aside the default. Counsel for Waterbury #1 stated on the record that he did not oppose the motion. The circuit court denied the motion, however, and gave the defense thirty days to file objections to the proposed judgment or to settle the matter.

In mid-November 1996, the parties stipulated to the dismissal of Waterbury #1 without prejudice.

At the conclusion of a hearing in early December 1996, and over Waterbury #2's objections, the circuit court signed a $337,453.93 default judgment in the plaintiff's favor. The order denying Waterbury #2's motion to set aside the default was signed that same day.

The Court of Appeals reversed,[2] and the plaintiff seeks leave to appeal.

II

MCR 2.603(D) governs motions to set aside a default. The court rule provides, in pertinent part:

> (1) A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

The Court of Appeals emphasized that a trial court's decision regarding whether to set aside a default will not be disturbed absent an abuse of dis-

---

[2] Unpublished opinion per curiam, issued March 3, 1998 (Docket No. 200042).

cretion. *Park v American Casualty Ins Co*, 219 Mich App 62, 66; 555 NW2d 720 (1996).[3] Citing *Reed v Walsh*, 170 Mich App 61, 64; 427 NW2d 588 (1988), the panel then explained that, for the purpose of applying MCR 2.603(D), what "good cause" means:

> (1) A substantial irregularity or defect in the proceeding upon which the default is based.
> (2) A reasonable excuse for failure to comply with the requirements that created the default.
> (3) Some other reason showing that manifest injustice would result if the default is not set aside.

Noting that Waterbury #2 did not allege an irregularity in the proceeding below, the Court of Appeals thus examined whether the defendant had presented a reasonable excuse for the default, and whether a manifest injustice would result from enforcing the default judgment.

The Court of Appeals was not persuaded that Waterbury #2 had a satisfactory explanation for its failure to answer the complaint and summons. Although the president of Waterbury #2 had contacted an officer of Waterbury #1 and obtained an assurance that Waterbury #1 would provide legal counsel and indemnification, Waterbury #2 then disregarded the matter until after the default was entered. This was neither diligent nor reasonable. A party is responsible for any action or inaction by the party or the party's agent. *Levitt v Kacy Mfg Co*, 142 Mich App 603, 609; 370 NW2d 4 (1985). Regarding the apparent failure of counsel for Waterbury #1 to act on behalf of Waterbury #2, the panel observed that the neglect of an

---

[3] Lv den 456 Mich 903 (1997).

attorney is not good cause and may be imputed to a party against whom default is entered. *Kuikstra v Cheers Good Time Saloons, Inc*, 187 Mich App 699, 703; 468 NW2d 533 (1991),  rev'd in part on other grounds 441 Mich 851 (1992).

The Court of Appeals was persuaded, however, that Waterbury #2 had demonstrated that a manifest injustice would result if the default were not set aside. Thus, the Court concluded, Waterbury #2 had shown "good cause" for purposes of MCR 2.603(D). The panel explained:

> A defendant can demonstrate that manifest injustice would result if there is no evidence that the defendant intentionally delayed the proceedings, if plaintiff had not been prejudiced by the defendant's default, if the period of inactivity was not unreasonable, and if the defendant presented evidence that, if proved, would establish a meritorious defense. *Reed, supra* at 66.
>
> Plaintiff does not allege that defendant intentionally delayed the proceedings. Further, plaintiff does not argue that the delay prejudiced either its ability to prove its case or its ability to gain the benefits of the relief sought. Further, neither the circuit court in the proceedings below, nor plaintiff in responding to the present appeal, complain[s] that defendant's periods of inaction were unreasonable. . . . Thus, defendant can establish manifest injustice from its having to pay plaintiff more than $300,000 if defendant can establish a meritorious defense. [Slip op, 3-4.]

Elaborating on the question of meritorious defense, the Court of Appeals emphasized that the president of Waterbury #2 had listed four theories in his affidavit. First, he contended that the circuit court lacked personal or subject-matter jurisdiction. Second, he argued that Waterbury #2 was not a party to the con-

tract between Waterbury #1 and the plaintiff. Third, he said that Waterbury #1 expressly had agreed to defend and indemnify Waterbury #2 with regard to controversies such as this. Fourth, he argued that Waterbury #2 was not the successor corporation of Waterbury #1.

The Court of Appeals rejected Waterbury #2's indemnification argument on the basis that the fact that a party is entitled to indemnification from another entity is not by itself a meritorious defense to a default judgment. *Hartman v Roberts-Walby Enterprises, Inc*, 17 Mich App 724, 727; 170 NW2d 292 (1969). The panel also rejected Waterbury #2's jurisdictional argument, reasoning that the defendant had waived any objection to personal jurisdiction, for purposes of this appeal, and that its argument about subject-matter jurisdiction was no more than a bare assertion.

With regard to the other issues, however, the Court of Appeals said that Waterbury #2 had put forward a meritorious defense. Thus, it was necessary to remand for further proceedings in order to prevent a manifest injustice. The Court explained:

> There exists a factual dispute regarding whether defendant purchased all or merely some of the assets of Waterbury #1, and whether Waterbury #1 remains a going concern. Further, while the similarity in name between the two corporations implies continuity, their locations in different states weigh in the other direction. Whether defendant is a successor corporation to Waterbury #1 remains an issue of fact, which, if resolved in defendant's favor[,] would provide defendant with an absolute defense to plaintiff's claims. For this reason, defendant has put forward a meritorious defense to this cause of action. MCR 2.603(D)(1). Under these circumstances, defendant would suffer manifest injus-

tice if forced to pay more than $300,000 in contract damages to a party to whom defendant in fact has no contractual obligation. Accordingly, we find that the trial court abused its discretion by denying defendant's motion to set aside the default judgment [sic]. [Slip op, 5.][4]

III

The ruling on a motion to set aside a default or a default judgment is entrusted to the discretion of the trial court. *Park v American Casualty Ins Co, supra.* Where there has been a valid exercise of discretion, appellate review is sharply limited. *Wendel v Swanberg*, 384 Mich 468, 475; 185 NW2d 348 (1971). Unless there has been a clear abuse of discretion, a trial court's ruling will not be set aside. *Kellom v City of Ecorse*, 329 Mich 303; 45 NW2d 293 (1951), *Brookdale Cemetery Ass'n v Lewis*, 342 Mich 14, 18; 69 NW2d 176 (1955), *Cramer v Metropolitan Savings Ass'n (Amended Opinion)*, 136 Mich App 387, 398; 357 NW2d 51 (1984), and *Gavulic v Boyer*, 195 Mich App 20, 24; 489 NW2d 124 (1992).

An abuse of discretion involves far more than a difference in judicial opinion. *Williams v Hofley Mfg Co*, 430 Mich 603, 619; 424 NW2d 278 (1988). It has been said that such abuse occurs only when the result is " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Marrs v Bd of Medicine*, 422 Mich 688, 694; 375 NW2d 321 (1985), quoting *Spalding v Spald-*

---

[4] As noted, Waterbury #2 moved to set aside the default following the hearing on damages, but before entry of default judgment.

*ing*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), and noting that, although the *Spalding* standard has been often discussed and frequently paraphrased, it has remained essentially intact.

This Court historically has cautioned appellate courts not to substitute their judgment in matters falling within the discretion of the trial court, and has insisted upon deference to the trial court in such matters. For example, the Court stated in *Scripps v Reilly*, 35 Mich 371, 387 (1877):

> It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate court will not re-examine. It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been.

And in *Detroit Tug & Wrecking Co v Gartner*, 75 Mich 360, 361; 42 NW 968 (1889), the Court said:

> To warrant this Court in interfering in matters so entirely in the sound discretion of the circuit court as the granting or refusing of a new trial, the abuse of discretion ought to be so plain that, upon consideration of the facts upon which the court acted, an unprejudiced person can say that there was no justification or excuse for the ruling made.[5]

---

[5] Our "great deference" to matters involving the discretion of the trial court comports with the approach in other jurisdictions. See, e.g., the definitions of "abuse of discretion" in *Adams v Borello*, 975 SW2d 188, 191 (Mo App, 1998), a judicial act that is untenable and clearly against reason and that works an injustice, *Burke v Harman*, 6 Neb App 309, 348; 574 NW2d 156 (1998), a clearly untenable ruling that unfairly deprives a litigant of a substantial right and a just result, *Yeap v Leake*, 60 Cal App 4th 591, 598; 70 Cal Rptr 2d 680 (1997), a ruling that exceeds the bounds of reason, considering all the circumstances that are before the court, and *State v Garza*, 192 Ariz 171, 175, n 7; 962 P2d 898 (1998), where the rea-

Moreover, although the law favors the determination of claims on the merits, see, e.g., *Huggins v MIC General Ins Corp*, 228 Mich App 84, 86; 578 NW2d 326 (1998),[6] it also has been said that the policy of this state is generally against setting aside defaults and default judgments that have been properly entered. See, e.g., *White v Sadler*, 350 Mich 511, 521; 87 NW2d 192 (1957), *Thomas v Jones*, 120 Mich App 191, 192; 327 NW2d 433 (1982), *Dogan v Michigan Basic Property Ins Ass'n*, 130 Mich App 313, 320; 343 NW2d 532 (1983), *Ferguson v Delaware Int'l Speedway*, 164 Mich App 283, 295; 416 NW2d 415 (1987), and *Perry v Perry*, 176 Mich App 762, 769; 440 NW2d 93 (1989).

IV

We agree with the plaintiff that the Court of Appeals failed to accord the circuit court's ruling the deference it was due in the instant case. We further agree that the Court of Appeals blurred the separate requirements of "good cause" and "meritorious defense" under MCR 2.603(D)(1).

The court rule requires a party seeking to set aside a default or a default judgment to demonstrate good cause and to file an affidavit showing a meritorious defense. Relying on prior decisions, the Court of Appeals said that a party may establish "good cause" by showing a substantial procedural irregularity or defect, a reasonable excuse for failure to comply with the requirements that created the default, or some

---

sons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice; a ruling that reaches an end or purpose not justified by, and clearly against, reason and evidence.

[6] Lv den 459 Mich 911 (1998).

other reason why a manifest injustice would result if the default judgment were not set aside. The panel then found a manifest injustice, partly on the basis that the plaintiff had put forth a potentially meritorious defense.

Our review reveals that the Court of Appeals, in determining whether there was good cause to set aside a default, has indeed considered the merit of the defense theory on several prior occasions. This reflects a misunderstanding of the separate nature of the requirements under MCR 2.603(D)(1), however.

The confusion appears to have stemmed from the following discussion in the Authors' Comments to 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 662  of the predecessor court rule, GCR 1963, 520.4:

> A proceeding to set aside a default or a default judgment, except when grounded on want of jurisdiction over the defendant, may be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed. Subrule 520.4. Good cause within the meaning of this provision would seem to include (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand.

In *Bigelow v Walraven*, 392 Mich 566, 576, n 15; 221 NW2d 328 (1974), this Court quoted this passage, beginning with the third sentence. The passage earlier had been cited by the Court of Appeals in such cases as *McDonald v Kersten*, 24 Mich App 681, 684; 180 NW2d 810 (1970), *Sylvania Savings Bank v Turner*, 27 Mich App 640, 649; 183 NW2d 894 (1970),

*Milinsky v Schmidt, Ellis & Associates, Inc,* 48 Mich App 192, 195; 210 NW2d 367 (1973), and *Mission Investment Co v Perfect Totalisator Corp,* 51 Mich App 376, 379-380; 214 NW2d 898 (1974).

The "manifest injustice" prong of the Honigman & Hawkins "good cause" test first was applied in *McDonald.* There, although the defendants appeared pro se at an earlier show-cause hearing concerning a land dispute, they were defaulted because they failed to file with the court clerk an answer to the complaint for injunctive relief. After observing that the defendants did not claim a substantial defect or irregularity in the proceedings, the Court of Appeals considered whether they had shown that manifest injustice would result from permitting the default to stand. Stating that the factual background of the controversy was relevant to this inquiry, the panel held that there would be no manifest injustice because the defendants did not claim a hardship from the plaintiff's use of the strip of land at issue. The Court went on to find (1) that there was a reasonable excuse for the failure to answer, though, and that the defendants thus had shown "good cause," but (2) that they had not established a meritorious defense.

The blurring of the separate inquiries of "good cause" and "meritorious defense" appears to have begun in *Mission Investment,* a contract case. There, after concluding that the defaulted defendant had not alleged any defect or irregularity in the proceedings, and had not shown a reasonable excuse for its failure to comply with filing requirements, the panel turned to the question of manifest injustice. Observing that the "real question" was whether a disputed down pay-

ment ever had been made, the Court noted the opposing arguments and concluded:

> Needless to say, the unraveling of such mysterious circumstances and allegations is the stuff for which trial courts, not appellate courts, were made. If the facts purportedly subscribed to in Mr. Buescher's original affidavit are true, defendant could have a complete defense to this action. [51 Mich App 381.]

Citing *Bednarsh v Winshall*, 364 Mich 113; 110 NW2d 729 (1961), the court set the default judgment aside and remanded to the trial court for further proceedings.

*Bednarsh* does not support the proposition that a meritorious defense is to be considered in determining whether there is good cause to set aside a default, however. To the contrary, the *Bednarsh* Court approached the questions as discrete inquiries. After observing that the defendant had filed an affidavit showing a meritorious defense, i.e., the defendant alleged payment and provided canceled checks, the Court concluded that the defendant had demonstrated good cause for the minor delay in responding to the summons:

> The showing made in connection with the motion was that defendant was served with summons and declaration. He took them to his attorney. Because the latter had also represented plaintiff he decided to turn them over to another lawyer. This resulted in some confusion as to conducting the defense. . . . We think defendant acted with reasonable care and dispatch, that the minor delay on the part of the defense resulted from confusion in the changing of attorneys and that this was seized upon with undue haste by plaintiff. [364 Mich 114.]

We are persuaded that the analytical difficulty that has arisen in this case and prior cases is due, in large part, to rote recitation of the "good cause" inquiry that was articulated by Honigman & Hawkins to include (1) a substantial irregularity or defect in the proceeding upon which the default is based, (2) a reasonable excuse for failure to comply with the requirements that created the default, or (3) some other reason showing that manifest injustice would result if the default is not set aside. As we emphasized earlier in this opinion, MCR 2.603(D)(1) and its predecessor state only that a party seeking to set aside a default or a default judgment must both file an affidavit of meritorious defense and show good cause.

The first two prongs of the Honigman & Hawkins "good cause" test are unremarkable and accurately reflect our decisions. It is the third factor, "manifest injustice," that has been problematic. The difficulty has arisen because, properly viewed, "manifest injustice" is not a discrete occurrence such as a procedural defect or a tardy filing that can be assessed independently. Rather, manifest injustice is the result that would occur if a default were to be allowed to stand where a party has satisfied the "meritorious defense" and "good cause" requirements of the court rule. When a party puts forth a meritorious defense and then attempts to satisfy "good cause" by showing (1) a procedural irregularity or defect, or (2) a reasonable excuse for failure to comply with the requirements that created the default, the strength of the defense obviously will affect the "good cause" showing that is necessary. In other words, if a party states a meritorious defense that would be absolute if proven, a lesser showing of "good cause" will be required than if the

defense were weaker, in order to prevent a manifest injustice.[7]

In the instant case, the Court of Appeals was persuaded that the defendant had stated a meritorious defense, but affirmed that the defendant had not alleged a procedural irregularity or defect, and had not given a reasonable explanation for its filing failure. Nonetheless, the Court ruled that the circuit court had abused its discretion in not setting aside the default because there were factual questions concerning whether Waterbury #2 was the successor to Waterbury #1 with respect to the plaintiff's contract action. As we have explained, this was an improper blurring of the "meritorious defense" and "good cause" requirements of MCR 2.603(D)(1).

V

For the reasons given, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[7] We further note that MCR 2.603(D)(3) is available to prevent a manifest injustice. That rule empowers a court to set aside an entry of default and a judgment by default in accordance with MCR 2.612. MCR 2.612(C)(1)(f) states that a court may relieve a party from a final judgment for any reason justifying relief from the operation of the judgment. However, we caution that the "any reason justifying relief" language should not be read so as to obliterate the analysis we have set forth regarding MCR 2.603(D)(1). Otherwise, the exception in MCR 2.612(C)(1)(f) could swallow the rule set forth in MCR 2.603(D)(1).