# STATE OF MICHIGAN

# COURT OF APPEALS

VALLEY CITY LINEN COMPANY,

Plaintiff-Appellee,

v

JPE RESTAURANT CORPORATION and JJC
RESTAURANT, INC., both d/b/a CRANKER'S
RESTAURANT & BREWERY,

Defendants-Appellants.

UNPUBLISHED
November 13, 2018

No. 341168
Kent Circuit Court
LC No. 17-002580-CB

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Defendants, JPE Restaurant Corp. (JPE) and JJC Restaurant, Inc. (JJC), appeal as of right the judgment that awarded plaintiff, Valley City Linen Company, $36,803.90 from JPE and $14,093.19 from JJC. Because the trial court did not address defendants' proffered meritorious defense of having never signed the written agreement at issue, we vacate the judgment and the trial court's denial of defendants' request to set aside the default, and we remand for further proceedings.

## I. BASIC FACTS

James Crank owns both defendant corporations, which operate at separate locations, each under the name Cranker's Restaurant and Brewery. JPE operates in Big Rapids, Michigan, while JJC is located in Grand Rapids, Michigan. Plaintiff is a company that rents out linens and textile supplies to various bars and restaurants, including defendants.

On January 21, 2015, plaintiff and defendants[1] entered into a one-year rental agreement, which under its provisions would automatically renew for successive five-year terms unless

---

[1] While the agreement did not mention the defendant corporate names, JPE and JJC, it mentioned that the customer was "Cranker's" and covered its locations in Grand Rapids, Mt. Pleasant, and Big Rapids. Also, although the initials "JC" are written on the agreement, which by the contract's terms purport to certify that the signer has the authority to enter into such an

-1-

notice was provided 60 to 90 days before the conclusion of the then-current term. The agreement provided that plaintiff would furnish and defendants would rent on a weekly basis, certain items, which primarily were textile related. Paragraphs 7 and 8 of the agreement state, in pertinent part:

> 7. Customer [Defendants] acknowledges that Company [Plaintiff] has made a substantial investment in merchandise and equipment. Customer shall have the right to terminate this Agreement for deficiencies in service if: (1) a written complaint is made promptly to the Company stating the precise nature of the deficiencies; (2) the Company is given thirty days from the date the notice is received to correct any deficiency; and (3) the Company fails to [c]orrect any deficiency within the thirty day period. Should Customer fail to give written notice of termination or unremedied deficiencies during the ten day period following the thirty day period Company has been allotted to correct the deficiencies, it shall be conclusively agreed that Company has corrected all deficiencies.

> 8. The parties agree that Company's actual damages in the event of premature termination of this Agreement shall be 75% of the average weekly gross invoiced amount for the period since the beginning of this agreement to date of termination, but not longer than the preceding 52 weeks, multiplied by the number of weeks remaining under the term of this Agreement plus actual attorneys' fees and costs.

Defendants failed to pay plaintiff in accordance with the agreement. As of March 2, 2017, the total amount defendants collectively owed plaintiff was $2,223.27. When plaintiff demanded payment in full, defendants terminated the agreement.

On March 22, 2017, plaintiff filed the instant complaint and alleged that defendants breached the contract by terminating the agreement prematurely. Plaintiffs sought, pursuant to paragraphs 8 and 9 of the agreement, $32,481.60 plus attorneys' fees and costs.

James Crank is the registered agent for both defendants. However, in the corporate filings, the resident agent address for JJC is 454 68th Street SW, Grand Rapids, and the resident agent address for JPE is 213 S. State St., Big Rapids, Michigan. Plaintiff attempted, through civil process server Jayme Weller, to serve Crank with the summons and complaint. Weller explained that he stopped at the Grand Rapids address several times, talked with an employee

---

agreement, the actual signature is not readily legible. Also, the question of whether Crank signed the agreement and bound defendants to its terms is not before us. Thus, nothing in this opinion is to be taken as a ruling on that particular issue; instead, because a default had been entered against defendants, our presentation of these facts assumes without deciding that defendants were obligated under the agreement.

each time, and left a card for Crank to call him back. However, after getting no contact, Weller concluded that Crank "is avoiding service," and plaintiff moved to allow alternate service.

The trial court granted plaintiff's request and found that service of process upon Crank could not reasonably be made as provided in MCR 2.105. Consequently, the court ordered that service of the summons and complaint may be made by first-class mail to 454 68th Street SW, Grand Rapids and by delivering it to the same address to an employee who is of suitable age and discretion to receive process, with instructions to deliver promptly to Crank.

On May 2, 2017, another civil process server, Jose Ontiveros, mailed two sets of the summons and complaint (one set for each corporate defendant) to Crank at the 454 68th Street SW address in Grand Rapids.[2] Additionally, copies of the summons and complaint were hand-delivered and left with the "[p]erson in charge" at the Grand Rapids address on May 3, 2017.

On June 1, 2017, plaintiff requested that a default be entered against defendants. On the following day, the court clerk entered the default. On June 6, the trial court entered a default judgment in the amount of $36,095.09, and a copy of the default request, affidavit, entry, and judgment and taxation of costs was mailed to Crank at 454 68th Street SW, Grand Rapids.

On July 28, 2017, defendants filed a motion to set aside the default and default judgment. Defendants claimed that they did not learn of the existence of the lawsuit until plaintiff attempted to satisfy the default judgment by way of a writ of execution, when a court officer visited JJC in Grand Rapids on July 21, 2017. Defendants argued that they had good cause to not answer the complaint because they lacked any knowledge of its existence. Defendants primarily relied on the fact that, while Crank was the resident agent for both defendants, plaintiff only attempted to serve Crank at the Grand Rapids location, which was the address for JJC and not JPE, which was in Big Rapids. Defendants also asserted that they had a strong meritorious defense to the complaint. They claimed that there never was any written contract between plaintiff and defendants because the signature on the agreement was not Crank's. Defendants also argued that in light of there being no valid written contract, there could be no reliance upon the liquidated damages provision. Further, defendants averred that they had been having issues with the level of service plaintiff was providing, and after their concerns were not addressed, were forced to "terminate the verbal contract." Lastly, defendants argued that, assuming a written contract existed, the liquidated damages provision was not enforceable because it was unconscionable under the UCC and because it was a penalty.

The trial court denied defendants' motion to set aside the default, but it granted the motion with respect to setting aside the default judgment. Regarding the default, the trial court noted that it was satisfied that the order for alternate service was proper and that plaintiff

---

[2] Although the certificate of mailings from the U.S. Postal Service lists that the mailings were for "James Crank," Ontiveros's affidavit of service stated that alternate service was provided to "James Clark."

complied with it. Without addressing whether defendants established good cause for failing to respond to the complaint, the trial court determined that

> [t]here is zero showing of a meritorious defense as to liability. The only thing I've heard today was that now Mr. Crank was somehow disappointed with aspects of the service so he stopped making payments. That is the anthesis of a meritorious defense. And so liability, in my view, stands under [MCR] 2.603(D)(1) because there has been no showing of a meritorious defense with regard to liability.

However, the court determined that setting aside the default judgment was warranted because the judgment established joint and several liability between the two defendants when each corporate defendant only should be liable for its own portion of the amount owed to plaintiff. As a result, the court ordered an evidentiary hearing to determine damages.

At the evidentiary hearing, only one witness was called: Jeff Jeltema, co-owner and vice president of sales and marketing for plaintiff. Jeltema testified that plaintiff tracked what was sent to each location separately and consequently billed each location separately; thus, it had a record of what each defendant owed plaintiff for plaintiff's services. And Jeltema explained that, under the written contract, when a party terminates the agreement before the term has expired, any "future" damages are calculated by looking at the average invoiced amount for the previous 52 weeks and multiplying that weekly average by the remaining number of weeks in the contract. The damages are then calculated to be 75% of that product. Consequently, the future damages attributable to JJC was $8,990.01, and the damages attributable to JPE was $23,452.20. Further, plaintiff's counsel introduced its legal billing statements, totaling $16,200, because the agreement allowed for plaintiff to recover "actual attorneys' fees and costs." Lastly, in addition to these damages, JPE had an outstanding balance of $1,639.10 and JJC had an outstanding balance of $615.78 at the time of termination.

On October 16, 2017, the trial court entered an opinion and order, which awarded plaintiff damages in the amount of $34,697.09, attorney fees in the amount of $16,200, plus costs. The court held that the liquidated-damages provision in the agreement was enforceable. Thus, with the liquidated damages portion calculated to be $23,452.20 for JPE and $8,990.01 for JJC and the past damages being $1,639.10 for JPE and $615.78 for JJC, the trial court calculated the total service-related damages to be $25,091.30 against JPE and $9,605.79 against JJC. Therefore, the trial court ordered that plaintiff was entitled to recover $25,091.30 in service-related damages, $11,712.60 in attorney fees, and 72.3% of its court costs from JPE.[3] And plaintiff was entitled to recover $9,605.79 in service-related damages, $4,487.40 in attorney fees, and 27.7% of its court costs from JJC.

---

[3] The trial court also apportioned the $16,200 in attorney fees by using the same proportion as was determined in the service-related damages. In other words, because JPE was apportioned 72.3% of the service damages, it also was apportioned 72.3% of the attorney fees and costs. Likewise, JJC was apportioned the remaining 27.7% of the attorney fees and costs.

On November 1, 2017, the trial court entered two judgments, one against each defendant, and defendants' appeal followed.

## II. ANALYSIS

Defendants argue that the trial court erred when it denied their request to set aside the default. "The ruling on a motion to set aside a default . . . is entrusted to the discretion of the trial court. Where there has been a valid exercise of discretion, appellate review is sharply limited. Unless there has been a clear abuse of discretion, a trial court's ruling will not be set aside." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999) (citations omitted).

"[A]lthough the law favors the determination of claims on the merits, it also has been said that the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *Id.* at 229 (citations omitted). The setting aside of a default is governed by MCR 2.603(D)(1), which states, "A motion to set aside a default or default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed."

Defendants claim that the trial court abused its discretion when it failed to consider, let alone accept, defendants' offer of a meritorious defense. Specifically, defendants argue that the trial court did not consider as a meritorious defense their claim that Crank never signed the contract at issue, which defendants presented in their brief in support of their motion to set aside the default. Crank stated in his accompanying affidavit that "the purported signature of the customer is not that of my own" and that he was "the only individual authorized to enter into any written agreement whatsoever with or on behalf of [JJC or JPE]." Thus, if Crank did not sign the contract, then defendants could not be liable on the written contract and would not be subject to the contract's liquidated damages provision, which also includes plaintiff's attorney fees as part of the damages. It is clear that defendants are correct: the trial court did not consider that as a potential meritorious defense. Indeed, the trial court only considered the possible meritorious defenses that (1) the default judgment held both defendants jointly and severally liable for the combined damages of both corporations and (2) defendants intentionally stopped paying on the contract because they were dissatisfied with the level of service they had been receiving from plaintiff.[4]

It is important to highlight that plaintiff's "complaint is for the collection of an amount owed to Plaintiff under a Rental Service Agreement dated January 21, 2015." Thus, if defendants never agreed to the terms of the written contract, defendants would not be subject to the liquidated damages provision contained in the contract, which took their approximately $2,200 in delinquent payments and ballooned the amount owed to plaintiff to almost $51,000.

---

[4] The trial court found merit to defendants' argument that they should not be subject to joint and several liability and relied on this in setting aside the default judgment. But the court found no merit to defendants' purported justification in withholding payments.

Therefore, because the trial court did not address the meritorious defense pertaining to defendants never having executed the agreement at issue, which was raised in defendants' brief at the trial court, we vacate the judgment and the order denying defendants' motion to set aside the default. We remand for the trial court to fully consider the defense in the context of defendants' motion under MCR 2.603(D)(1).[5]

We vacate the judgment and the trial court's denial of defendants' request to set aside the default, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.[6]

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel

---

[5] Notably, the trial court also never made any determination, finding, or ruling on whether defendants made a showing of good cause. When the trial court denied defendants' motion to set aside the default, the court only determined that defendants made "zero showing of a meritorious defense as to liability." While the trial court acknowledged that the strength of the meritorious defense will affect how much "good cause" a defendant has to show, it presumably did not address the good cause aspect because of the "zero" meritorious defense showing. Thus, in considering defendants' meritorious defense of never having executed the written agreement, the trial court will have to also consider whether a sufficient showing of good cause exists. See *Alken-Ziegler*, 461 Mich at 233-234 ("[I]f a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required than if the defense were weaker, in order to prevent manifest injustice.").

[6] Because we are remanding for further proceedings, we decline to address defendants' argument related to the validity of the liquidated damages clause in the written agreement.