*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CH,

Petitioner-Appellee,

v

BD,

Respondent-Appellant.

UNPUBLISHED
June 11, 2026
1:37 PM

No. 376696
Macomb Circuit Court
LC No. 2025-001112-PP

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

The trial court granted petitioner's request for a personal protection order (PPO) and denied respondent's motion to terminate the PPO. Respondent now appeals, arguing that the PPO was improperly granted and infringed on her rights. Because the trial court did not err, we affirm.

## I. BACKGROUND

These parties appeared previously in this Court when respondent appealed a trial court order that denied respondent's motion to modify custody and parenting time involving the child. *Dean v Hunter*, unpublished per curiam opinion of the Court of Appeals, issued March 18, 2026 (Docket No. 376734). Although this appeal deals with the same events, respondent is appealing the trial court's order denying her motion to terminate the PPO in this case.

The problems between the parties that resulted in the PPO began when the child was in petitioner's care, and respondent repeatedly called and messaged petitioner to speak to the child. The situation escalated when respondent posted a video on social media that included a screenshot of the parties' messages, along with petitioner's cell phone number. Petitioner received messages from an unknown number that told petitioner that his information was "going viral," the police were being called, and his address would be leaked. Further, respondent contacted the police, and officers visited petitioner's home and performed a welfare check on the child. Petitioner informed respondent that he intended to file for full custody and asked respondent why she was harassing him; respondent replied that she would call the police every time petitioner denied her contact with the child.

Petitioner moved for full custody and sought an ex parte PPO against respondent. The PPO was granted without a hearing, and petitioner informed respondent of the PPO when she contacted petitioner to arrange pick up of the child. A week later, the trial court held a custody hearing and increased petitioner's parenting time. After respondent delayed transfer of the child to petitioner during petitioner's next scheduled parenting time, the trial court adopted the Friend of the Court's (FOC) recommendation that respondent's parenting time be temporarily suspended.

When the child was finally transferred into petitioner's care, respondent contacted law enforcement and requested that they conduct a welfare check on the child at petitioner's house. According to a police report, the officers who received the dispatch call were familiar with the situation between the parties and contacted respondent, informing her that they would not be conducting a welfare check due to the excessive number of calls where neglect was unfounded. The officers proceeded to petitioner's home, spoke with petitioner, and checked on the child.

Respondent moved to modify custody and parenting time, and the FOC recommended that petitioner be awarded sole legal and physical custody of the child. At the hearing on respondent's motion, the trial court reviewed police reports documenting respondent's excessive reporting of petitioner to the police. Given the lack of evidence of abuse, the trial court instructed respondent to cease calling the police and confirmed that petitioner's PPO was still effective. After claiming that she had never been served notice of the PPO, respondent was served with the PPO by the trial court.

Subsequently, respondent moved to terminate the PPO, and the trial court denied the motion. Respondent now appeals the trial court's order denying the PPO termination.

## II. ANALYSIS

## A. PERSONAL PROTECTION ORDER

On appeal, respondent argues that the trial court erred in granting petitioner's request for a PPO. We review for an abuse of discretion of the trial court's grant of a PPO, as well as its denial of the PPO's termination. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). The trial court abuses its discretion if its decision is "outside the range of principled outcomes." *Brown v Rudy*, 324 Mich App 277, 288; 922 NW2d 915 (2018). The trial court's findings of fact for its PPO decision are reviewed for clear error—a "definite and firm conviction that a mistake has been made." *CAJ*, 339 Mich App at 464.

Here, the PPO expired on September 3, 2025, and there is no evidence in the record of efforts to continue the PPO, which suggests that this case is moot, and a judgment would not "have any practical legal effect upon a then existing controversy." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018). A case is not moot, however, if a respondent argues that a PPO was improperly issued and requests that notice of the PPO's rescission be reflected in the Law Enforcement Information Network (LEIN). *Id.* at 319-320. Respondent argues on appeal that if the trial court should have never issued the PPO, then references to the PPO should be removed from LEIN. Accordingly, this case is not moot.

Under MCL 600.2950, a trial court must issue a PPO that restrains an individual with whom a petitioner shares a child if the trial court determines that there is reasonable cause to believe that the individual may commit certain acts, including unauthorized removal of a child, conduct under MCL 750.411h or MCL 750.411i, or "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." When deciding whether there is reasonable cause for the PPO, the trial court considers whether respondent has committed one of the acts listed, as well as testimony, documents, or other evidence. MCL 600.2950(4). "The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008) (cleaned up).

Here, respondent's actions created reasonable cause to believe that she would commit acts of stalking under MCL 750.411h. Under MCL 750.411h, stalking includes repeated uncontested contact through electronic communications that reasonably causes emotional distress, such as terror, fright, or intimidation. After petitioner received an excessive number of calls and messages from respondent and told respondent to stop contacting him, respondent not only ignored his request but also published petitioner's phone number on social media, which led to threats from an unknown phone number, as well as called the police to petitioner's house multiple times.

Because petitioner reasonably felt harassed, intimidated, and concerned for his safety as a result of respondent's actions, there was reasonable cause to believe respondent committed an act under MCL 600.2950(1). Further, there was reasonable cause to believe that respondent would continue the harassment, considering that respondent explicitly stated that she would be continuing her course of action, including contacting the police every time petitioner denied respondent contact with the child. Although respondent claims that her conduct was simply parental communication, the excessiveness and pervasiveness of respondent's contact with petitioner fails to serve any legitimate purpose. See *Hayford*, 279 Mich App at 332-333.

Respondent also argues that the PPO was misused to interfere with the custody arrangement. Although the trial court must have reasonable cause that respondent will commit an act under MCL 600.2950(1) in order to issue a PPO, there is nothing in the section that prevents issuing the PPO because it interferes with a custody arrangement. See MCL 600.2950(5) (preventing issuance of a PPO where certain conditions involving property interests apply). Rather, "this Court has recognized that a PPO need not comply with the Child Custody Act under certain circumstances," *Hayford*, 279 Mich App at 328, and respondent has failed to show that those circumstances did not apply here given her behavior. Thus, the trial court did not err when issuing the PPO and denying respondent's request to terminate the PPO.

## B. CONSTITUTIONAL RIGHTS

Additionally on appeal, respondent argues that her due process and First Amendment rights were violated by the granting of the PPO without notice and without factual allegations. The Court reviews de novo constitutional issues. *In re MS*, 291 Mich App 439, 442; 805 NW2d 460 (2011). Here, a majority of respondent's arguments are abandoned on appeal because respondent has failed to address or explain her arguments pertaining to constitutional errors. See *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 414; 809 NW2d 669 (2011). To the extent that the Court

is able to glean and address respondent's arguments, it will do so below, but keep in mind, "[a]n appellant may not merely announce [her] position and leave it to this Court to discover and rationalize the basis for [her] claims." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008).

For arguments relating to notice, "[t]here is no procedural due process defect in obtaining an emergency order of protection without notice to a respondent when the petition for the emergency protection order is supported by affidavits that demonstrate exigent circumstances justifying entry of an emergency order without prior notice and where there are appropriate provisions for notice and an opportunity to be heard after the order is issued." *Kampf v Kampf*, 237 Mich App 377, 383-384; 603 NW2d 295 (1999) (cleaned up). Petitioner properly received an ex parte PPO. After petitioner received the PPO, respondent was served notice of the PPO, moved to terminate the PPO, and argued at the hearing the same issues she now raises on appeal. Respondent's arguments about notice are without merit given that the ex parte PPO was properly issued.

Respondent additionally argues that "under MCR 3.705(B)(1), the PPO and supporting documents must be served 'as soon as practicable' after entry to ensure the respondent's ability to respond." MCR 3.705(B)(1) does not support this contention and instead provides that "as soon as possible," the court shall schedule a hearing unless the petitioner requests an ex parte order.[1] Here, petitioner requested an ex parte order, and so MCR 3.705(B)(1) is inapplicable.

---

[1] Throughout her brief on appeal, respondent cites to several cases, statutes, and court rules for various propositions, including the following as they appear in her brief:

- "Michigan courts have consistently held that lawful conduct, such as parental contact or requests for welfare checks, does not satisfy this statutory threshold. See *Pickering v Pickering*, 253 Mich App 694, 701; 659 NW2d 649 (2002) (finding that a PPO cannot be premised on conduct that is not unlawful and poses no credible threat)."

- "Michigan precedent is clear that orders entered without proper service are void. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). Because service is a jurisdictional prerequisite, the trial court's entry and enforcement of the PPO absent timely service rendered the order void ab initio. See also MCR 2.105(J)(3) (defective service deprives the court of jurisdiction)."

- "Additionally, the First Amendment protects lawful communications and the right to petition the government, including contacting law enforcement for welfare checks. *City of Houston v Hill*, 482 US 451, 461; 107 S Ct 2502; 96 L Ed 2d 398 (1987)."

The authorities that respondent cites above do not support these contentions. We expect that parties provide authority for their arguments, see *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), and we understand that mistakes may happen. Despite this, we require that the authorities cited in the parties' filings substantially and reasonably support their arguments.

Respondent also argues that the PPO violated her First Amendment rights. "While a person subject to a PPO does not give up the constitutional right to free speech merely by being subject to an order, the right to speak freely is not absolute" and "must be understood in light of another person's interest in being left alone." *ARM v KJL*, 342 Mich App 283, 299; 995 NW2d 361 (2022) (cleaned up). The PPO does not censor what respondent says but instead limits her contact with petitioner, regardless of what respondent attempts to communicate to petitioner, which is not a violation of her right to free speech. See *id.* at 299-301. Therefore, respondent's First Amendment argument fails.

### III. CONCLUSION

Respondent has failed to show that the trial court erred in issuing petitioner's PPO request and denying respondent's motion to terminate the PPO. Further, respondent has not shown that the PPO violated her constitutional rights.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

By signing a document, the signer certifies that she has read the document and that to the best of "her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." MCR 1.109(E)(5). Violations of this rule may result in appropriate sanctions, such as an award to the other party of reasonable attorney fees. MCR 1.109(E)(6). Further, this Court may take disciplinary action when a party files a brief that is "grossly lacking in the requirements of propriety, violate[s] court rules, or grossly disregard[s] the requirements of a fair presentation of the issues to the court." MCR 7.216(C)(1)(b). These rules apply to all parties, regardless if they appear *in propria persona*. See *Totman v Sch Dist of Royal Oak*, 135 Mich App 121, 126; 352 NW2d 364 (1984) ("We agree with the appellees that a person acting *in propria persona* should be held to the same standards as members of the bar.").

Here, the errors that we found in respondent's brief do not rise to a level to warrant disciplinary actions in this instance. We warn respondent and other participants in this Court, however, that submissions of filings that contain overt and excessive errors in authority may lead to disciplinary actions in the future. See *United States v Farris*, 171 F4th 920 (CA 6, 2026).