*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC THAYER and NICOLE THAYER,

      Plaintiffs-Appellees,

v

STEVE DIPPLE, ALL AMERICAN HOME
INSPECTION LLC, ROSEANNA BIONDO, ZWZ
PROPERTIES LLC, and PAUL GLOBIE,

      Defendants,

and

LEONARD SIUDARA,

      Appellant.

UNPUBLISHED
May 11, 2023

No. 362213
Lapeer Circuit Court
LC No. 20-053566-CH

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

This case began as a lawsuit involving a house full of toxic mold and evolved into a dispute about a 2018 Cadillac sedan. Paul Globie sold the mold-infested house to plaintiffs Eric and Nicole Thayer. The Thayers sued Globie, who failed to defend. A default, default judgment, and a creditor's exam followed, with the Cadillac emerging as Globie's only asset.

The Thayers unsuccessfully attempted to seize the Cadillac. Attorney Leonard Siudara joined the fray, representing Globie. Siudara promised to provide the Thayers with a key to Globie's vehicle if his motion to set aside the default and default judgment failed, and he made good on that promise. But Globie filed for bankruptcy first and the Cadillac became property of the bankruptcy estate. The circuit court granted the Thayers' motion to impose sanctions against Siudara based on "deliberate misrepresentations to the Court." We vacate the court's order and remand for further proceedings consistent with this opinion.

-1-

## I.  BACKGROUND

The Thayers sued several defendants, including Globie, for withholding information about leaks and toxic mold in a house the Thayers bought from Globie.  Globie did not answer the complaint.  The court entered a default and eventually a default judgment for $69,085 and $1,638.25 in interest.  In October 2021, the court issued a subpoena ordering Globie to appear and to present evidence of his finances and assets.  Attorneys James J. Kelly and John C. Cusmano entered a "notice of limited appearance," indicating their representation of Globie only in relation to the creditor's exam.  Globie's attorneys did not move to set aside the default or default judgment.

On November 23, 2021, the court entered an order permitting the Thayers to seize and sell Globie's 2018 Cadillac CTS, the only valuable asset remaining in Globie's name.  Globie concealed the whereabouts of the Cadillac, however, thwarting the Thayers' seizure attempts.  Accordingly, the Thayers filed an ex parte motion for an order to show cause against Globie for "unlawfully interfering with a valid Court Order."  Attorney Kelly filed another notice of appearance, this time limited to filing a motion on Globie's behalf to establish a payment plan.  Globie sought to repay his debt in installments based on his limited income and lack of assets.  The circuit court granted Globie's motion, ordering him to pay $300 each month beginning March 25, 2022.  But the court did not revoke its earlier order permitting the Thayers to seize the Cadillac.

On April 6, 2022, attorney Leonard Siudara filed an appearance "for the limited purpose of moving to set aside default judgment and orders for post-judgment execution," kicking off the events leading to this appeal.  Before entering his appearance, Siudara sent a letter to counsel for the Thayers, Daniel Barnett, stating his intent to file a motion to set aside the default and the default judgment.  Siudara further stated:

> Mr. Globie has given me the key fob to the Cadillac and written authority to present that fob to you in court should [the circuit court] deny my motion.  I am attaching a photo of the fob which is secure in my office safe.  In the meantime, the car is secured in a storage facility.
>
> . . . In the meantime, I would ask that you suspend efforts to enforce the judgment.  If I lose the motion, I'll hand over the keys.

On April 14, the court entered an order holding Globie in contempt of court "for willfully disobeying the November 23, 2021 Order to Seize Property."  The court ordered the Thayers "to attempt to locate the Cadillac CTS."  In the event those attempts failed, the court stated, "[the Thayers] shall bring forth a motion and the Court shall sentence Defendant Globie to jail until he turns over possession of the Cadillac CTS."  That same day, Siudara sent a letter to Barnett and his co-counsel, stating "I again make the offer (3rd time) to give you the keys to the Cadillac if I lose my motion.  And if I win, your previous post-judgment orders are mooted."

Siudara did not move to set aside the default and default judgment until April 22.  Siudara did not claim that Globie was free of liability, or that Globie had been deprived of notice of the underlying suit or an opportunity to be heard.  Rather, Siudara contended that the Thayers failed to "offer[] any proofs of damages" and that the circuit court failed to apportion responsibility among the named defendants.  "That alone should be 'good cause' to set aside the default

judgment," Siudara insisted. Globie then claimed to have meritorious defenses to three of the counts in the Thayers' complaint or that summary disposition under MCR 2.116(C)(8) was warranted.

On Monday, May 2, 2022, the court denied Globie's motion to set aside the default and default judgment because he knew about the default judgment for several months without challenging it. The court reasoned on the record:

> As counsel has indicated, a motion to set aside a default shall be granted only if this court lacked jurisdiction or if good cause is shown and the moving party shows by affidavit facts demonstrating a meritorious defense. Additionally, if personal service was made on the party against whom the default was taken, the default may only be set aside if the motion is filed within 21 days after entry of the default judgment or if there are grounds for granting relief from the judgment under [MCR] 2.612. Pursuant to MCR [2.612(C),] [t]his Court may relieve a party from a final judgment, order, or proceeding on just terms for any reason justifying relief from the operation of the judgment or order. However, the motion must be made within a reasonable amount of time.

> In considering [Globie's] motion to set aside the default, the court is looking at the amount of time that has passed since [Globie] became aware of this lawsuit and became aware of the default and aware of the default judgment against him, and looking at the extent of his personal involvement in regard to these proceedings in which the parties participated, it appears to this court that this way after the fact defendant's motion to set aside the default and the default judgment does not comply with the court rules or with [*Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219; 600 NW2d 638 (1999)], as cited by Mr. Siudara also indicating [sic] by the [Thayers].

> The motion to set aside the default and the default judgment is considered and denied.

At the close of the Zoom hearing, Barnett asked for the Cadillac key fob to be sent to him by "first class mailing, certified mailing or priority with delivery signature restrictions." Siudara agreed to send the key and hoped "that satisfies the issue." The court denied the Thayers' request for costs with the caveat "if the Cadillac is not delivered and Cadillac is not in the condition that it is expected to be, you may renew your motion, counsel." Siudara interjected, "One clarification. I'm not in a position to deliver the Cadillac. I will tell him where it's at and leave that to him." The court responded, "[W]e're assuming that as an officer of the court you're going to give him the keys and Mr. Barnett is going to try to get the Cadillac. If they have to come back and ask for the Cadillac again, the Court will revisit the issue of additional fees and costs."

On Wednesday, May 4, Siudara wrote a letter to Barnett accompanying the Cadillac key fob. The letter stated:

> As you have now been advised by your several conversations, Mr. Globie has retained Ann M. Howard . . . to file a bankruptcy petition. I understand this will be

-3-

done today. The bankruptcy petition will stay all further proceedings in Thayer v Globie.

> It is also my understanding that the Cadillac will become an asset of the bankruptcy estate the moment the petition is filed. I would imagine you will be required to advise the trustee that you are in possession of the key fob.

> I will not be involved in the bankruptcy proceedings other than being listed as a general creditor alon[g] with your client.

Although the letter was dated May 4, the post office receipt indicates that Siudara did not mail it until 11:25 a.m. on May 5.

In the meantime, attorney Ann Howard interviewed Globie on the morning of May 4. "After considerable discussion of various options," Globie opted to file for bankruptcy. Howard continued:

> 4. Prior to electronically filing Mr. Globie's Chapter 13 Petition, I called Mr. Barnett as a courtesy to advise [of] my retention and Mr. Globie's intent to file for Chapter 13 protection. Filing the petition would mean that Mr. Globie's Cadillac would immediately become an asset of the bankruptcy estate under the exclusive control of the appointed trustee.

> 5. "Livid" would be an accurate description of Mr. Barnett's reaction to my phone call. . . .

> \* \* \*

> 7. I filed Mr. Globie's Chapter 13 petition later that same day.

On May 4, Barnett filed an ex parte motion to enforce the court's order for seizure of the Cadillac on behalf of the Thayers. Barnett argued that at the May 2 hearing, Siudara stated in court "that he was in possession of the key to [Globie's] Cadillac CTS and that he would mail it to [Barnett] via priority or similar mail with restricted delivery." Barnett continued:

> 7. [Barnett] received a phone call on May 4, 2022, informing him that [Siudara] would not in fact be mailing the key, rather, he turned the key over to a bankruptcy attorney because [Globie] intends on filing for bankruptcy.

> 8. [Siudara] made a material misrepresentation to this Court when he stated that he was going to mail the key to [Barnett], turn over the Cadillac, and apprise [Barnett] of its location.

> \* \* \*

> 11. This Court declined to award attorney fees, costs, and any other sanctions during the May 2, 2022 hearing, but ordered that [the Thayers] could renew their Motion, filed on April 4, 2022, should [Globie] fail to turn over the Cadillac.

* * *

13. [Globie] is now deliberately refusing to turn over the Cadillac CTS.

14. [Globie] and [Siudara] are both in violation of this Court's Order.

Barnett asked the court to order Siudara "to immediately disclose the location of the Cadillac CTS" and to sanction both Globie and Siudara.

On May 5, Siudara filed a response to the Thayers' ex parte motion on behalf of Globie. Siudara asserted that Globie filed for bankruptcy "a mere 48 hours" after the May 2 hearing. Globie had every right to file for bankruptcy protection to discharge his $70,000 judgment debt, Siudara urged, after the Thayers "spurned favorable 11th hour settlement terms offered" by attorney Howard. The filing of that petition vested title to the Cadillac in the bankruptcy trustee and eliminated the circuit court's jurisdiction over Globie and the vehicle. "Even though Mr. Barnett well knew a bankruptcy petition would be filed, he intentionally kept that information from th[e] court," Siudara accused. Siudara further noted "Mr. Barnett's misplaced concern for [Siudara's] alleged failure to send the Cadillac key fob to him."

> Please note that no timetable for key fob delivery was set by me or the court during the motion proceedings of May 2nd. And no deadline or breach of deadline is alleged in [the Thayers'] motion. It was always my intention to comply and do this in a reasonable time frame.

> I had other business and matters to attend to in the Lapeer area following the motion hearing. I returned to my home office at dinner time. It was not unreasonable for me to schedule a meeting the next afternoon with the client to explain the court's decision denying the motion and discus[s] possible settlement options that included tendering the key-fob and the automobile vs seeking bankruptcy protection to discharge the entire $69,000 default judgment. That meeting "reasonably" convened the afternoon of the next day, Tuesday, May 3rd – 24 hours after the motion hearing.

> As I have no experience in bankruptcy law and procedures, I reasoned it made sense to arrange for a Wednesday (May 4th) early morning meeting with Ms. Howard who is an expert in Chapter 7 & 13 procedure. That meeting occurred 48 hours after the court denied the motion and heard me say that I would mail the key to Mr. Barnet[t]. I did not think it unreasonable in any regard to schedule an immediate meeting with Ms. Howard to explore the bankruptcy option. I attended that meeting.

> By 11:00 the morning of the 4th, it was clear that Mr. Globie's best option was to file for Chapter 13 protection which could be easily accomplished later in the day via e-filing. And since I would not be involved in any way with the proceedings, and more importantly since I knew filing would immediately stay the enforcement orders of this court and importantly vest control of the Cadillac to the trustee, it seemed logical to tender the key fob to Ms. Howard who soon would be in communication with the trustee.

-5-

Mr. Barnett was so advised. Ms. Howard conveyed and discussed several advantageous settlement options with Mr. Barnett which, if one was accepted, would have avoided the threatened filing. However, Mr. Barnett's rigidity derailed any possibility of settlement and prompted the May 4th afternoon Chapter 13 filing.

After discussing the matter of the key fob further, it was Ms. Howard's recommendation – to which I concurred – that I should follow thru [sic] with my representation to send the key fob to Mr. Barnett. Since he wanted the key fob, let him tender it to the trustee.

Siudara placed the key fob in the mail the next day, May 5. According to Siudara, only Barnett would think that this amounted to an unreasonable delay.

The court did not enter its order following the May 2 hearing until May 17. The court denied the motion to set aside the default, default judgment, and post-judgment orders. Although the court denied the Thayers' motion for sanctions and request for costs and fees, the court noted that they could renew their motion if Globie failed to turn over the Cadillac. And although Siudara had by then already mailed the key fob to Barnett, the court ordered Siudara to do so.

On May 20, the Lapeer County Clerk notified Siudara, "We will need an order to close the case due to the stay." On May 31, Siudara sent a letter to the court indicating:

Pursuant to the 5-20-22 request of the county clerk, I have prepared and now submit a proposed order closing this case. Mr. Globie filed a Chapter 13 petition on May 5th, the same day that Mr. Barnet[t] prematurely filed a motion in this case under the misinformed belief I would not tender the keys to the Cadillac to him. That motion is now noticed for this Monday morning.

In have fully complied with your verbal bench directive issued during the motion hearing on May 2nd. My written response to counsel's May 5th motion details all that I did in the 72 hours following the May 2nd motion hearing. The Cadillac key fob was mailed to Mr. Barnett on May 5th.

Because the May 5th Chapter 13 filing stayed further proceedings in your court, I recently made inquiry to Mr. Barnet[t] if he intended to proceed with his motion this Monday morning. I was surprised when I learned this morning from Mr. Barnett's associate that he plans to argue his motion this Monday morning.

I want you to know that I will not be appearing Monday morning. I have no oral argument to offer. My written response to the motion details all that I have to say. I can add nothing more if I were to appear in court this Monday. I will be travelling to the UP that morning.

Besides, the Cadillac as of May 5th has become an asset of the Chapter 13 Trustee.

The proposed order accompanying the letter provided that further proceedings were stayed and the case closed.

The circuit court heard argument regarding the Thayers' motion for sanctions on June 6, 2022. Siudara failed to attend. At the hearing, Barnett acknowledged that he could no longer seek a court order for Globie to turn over the Cadillac because of the bankruptcy filing. But, Barnett urged, he could still seek sanctions. Between the July 21, 2021 default judgment entry and the June 6, 2022 hearing, the Thayers had incurred $9,812.50 in attorney fees and $1,280.24 in costs. Barnett declined to ask for those sanctions against Globie as the judgment was already in bankruptcy and there was no chance of collection of additional sanctions.

Barnett did seek sanctions against Siudara, however:

> What I am asking for is there were multiple representations to this Court from Mr. Siudara that the car would be turned over. There was a motion to set aside the default. I'm sure your Honor remembers, and Mr. Siudara was there in person and said he would mail it out that day. We sent in an order to that effect that was not objected to, and he just - - I guess, your Honor, I'm asking because the conduct of Attorney Siudara was clearly deceitful, and instead of mailing the key, he took his client to a bankruptcy attorney when clearly he knew that's what they were going to do the entire time.

Barnett sought $10,965 in attorney fees and $40 in costs incurred from the time Siudara became involved in the case.

The circuit court granted Barnett's request for sanctions against Siudara, stating in its order, "[The Thayers] are awarded sanctions against [Siudara] for his deliberate misrepresentations to the Court." Barnett subsequently submitted an affidavit and billing report to support the amount requested.

Siudara objected to the court's June 6 order, asserting that the court's additional review was "compel[led]" by the bankruptcy filing. Siudara contended that the provision in the May 17 order permitting the Thayers' to renew their motion for sanctions applied to Globie alone if he did not turn over the Cadillac. The May 17 order only required Siudara to turn over the key fob by priority mail with restricted delivery. It did not set a deadline and Siudara complied with that order within 72 hours. Siudara emphasized that Barnett received the key on May 9. Even so, Barnett misled the court at the June 6 hearing by "inferring that the key had not been sent." Siudara accused Barnett of making patently false allegations in his May 4 motion that Globie was deliberately refusing to turn over the Cadillac and that Siudara had violated the court's order.

Siudara continued that Globie could not turn over the Cadillac and Siudara could not advise Globie to do so as the Cadillac became an asset of the bankruptcy estate on May 4. In his objection, Siudara made the following admission:

> It is true that tendering the Cadillac key to Ms. Howard for delivery to the bankruptcy trustee was initially considered during conversations on May 4th, the date Chapter 13 was filed, and that initial consideration was passed on to Mr. Barnett. However, this initial thought was discarded later that day in favor of mailing the key fob to Mr. Barnett with an instruction to turn the key fob over to the bankruptcy trustee.

And Siudara argued that the filing of the bankruptcy petition voided the circuit court's May 4 and 17 orders. The court thereafter could not impose sanctions against Siudara for failing to comply with a voided order.

Finally, Siudara accused Barnett of making misrepresentations to the court at the June 6 hearing. Contrary to Barnett's insistence that Siudara had not mailed the key fob, it was mailed out on May 5 and Barnett received it on May 9. Siudara only promised to turn over the key fob and the court only ordered him to mail the fob. Yet, Barnett stated at the June 6 hearing, "What I am asking for is there were multiple representations to this court from Mr. Siudara that the car would be turned over."

It does not appear from the lower court record that the circuit court ever considered Siudara's objections to the order following the June 6 hearing. Siudara now appeals.

## II. ANALYSIS

Trial courts have "inherent authority to impose sanctions on the basis of the misconduct of a party or an attorney." *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639; 607 NW2d 100 (1999). This power flows naturally from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). The Legislature acknowledged this power in enacting MCL 600.611, which states, "Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments."

We review for an abuse of discretion a lower court's decision to impose sanctions. *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 359213), slip op at 3; *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013); *Richardson v Ryder Truck Rental*, 213 Mich App 447, 450; 540 NW2d 696 (1995). A court abuses its discretion if "it chooses an outcome outside the range of reasonable and principled outcomes." *In re Bibi*, 315 Mich App 323, 329; 890 NW2d 387 (quotation marks and citation omitted). We review for clear error any factual findings underlying the court's discretionary decision to impose sanctions. *Hardick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011).

The problems arising from Siudara's conduct in this case began when he filed his appearance on April 6, 2022. He had been communicating with opposing counsel even sooner. Throughout this period of time, Globie was under a court order to turn over the Cadillac to the Thayers. Siudara did not advise Globie to immediately turn over the Cadillac. Nor did Siudara move to set aside the order compelling Globie to turn over the Cadillac or the order authorizing the sheriff to seize the vehicle. Instead, Siudara took possession of the key fob for the vehicle and kept it in his office, thereby taking control of the vehicle itself. Siudara's belief that the default and default judgment should be set aside and collection orders vacated did not eliminate his legal duty to turn over the Cadillac pursuant to court orders that neither he nor his client ever challenged.

"A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High School Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998). As described by the United States Supreme Court:

We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings . . . . A lawyer who counsels his client not to comply with a court order during trial would, first, subject his client to contempt, and in addition, if he persisted the lawyer would be exposed to sanctions for obstructing the trial. [*Maness v Meyers*, 419 US 449, 458-460; 95 S Ct 584; 42 L Ed 2d 574 (1975) (quotation marks and citation omitted).]

So not only must a party comply with court orders entered against him or her, a lawyer must advise his or her client to comply with such orders or face consequences personally.

Siudara was duty bound from the moment he entered the case to advise Globie to obey the court's order to turn over the Cadillac. If that duty was not immediately clear to Siudara, the court's April 14 order holding Globie in contempt "for willfully disobeying the November 23, 2021 Order to Seize Property" should have made it abundantly obvious. Rather than advising his client to avoid further contempt, Siudara again notified Barnett that Globie would keep the Cadillac and Siudara the key until the motion to set aside the default and default judgment was considered.

Further, Siudara's motion to set aside the default and default judgment failed to address, much less establish, good cause for doing so. As stated by our Supreme Court in *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015):

A default or a default judgment may be set aside pursuant to MCR 2.603(D), which states:

A motion to set aside a default or a default judgment, except when grounded on a lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

However, "the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *Alken-Ziegler, Inc*[, 461 Mich at 229] "The carelessness or neglect of either the litigant or his attorney is not normally grounds for granting a belated application to set aside a default regularly entered." *White v Sadler*, 350 Mich 511, 522; 87 NW2d 192 (1957).

Good cause to set aside a default and default judgment

can be shown by: (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand. [*Shawl v*

-9-

*Spence Bros, Inc*, 280 Mich App 213, 221; 760 NW2d 674 (2008) (quotation marks and citations omitted).]

Globie received timely notice of both the default and the default judgment. Yet, Globie never moved to set either aside. Counsel retained by Globie in the fall of 2021 did not move to set them aside. Ten months elapsed between entry of the default judgment and Siudara's motion to set it aside. Siudara's motion did not allege "a substantial defect or irregularity in the proceedings upon which the default was based" or "a reasonable excuse for failure to comply with the requirements which created the default." And Siudara entirely neglected to address any of the factors governing whether a party has shown good cause as described in *Shawl*, 280 Mich App at 238:

> (1) whether the party completely failed to respond or simply missed the deadline to file;
>
> (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;
>
> (3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;
>
> (4) whether there was defective process or notice;
>
> (5) the circumstances behind the failure to file or file timely;
>
> (6) whether the failure was knowing or intentional;
>
> (7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);
>
> (8) whether the default judgment results in an ongoing liability (as with paternity or child support); and
>
> (9) if an insurer is involved, whether internal policies of the company were followed.

Instead, Siudara contended that the default judgment should have been "apportioned," and that the court's failure to determine Globie's "apportioned responsibility" constituted a "manifest injustice" giving rise to good cause to set aside the default. Siudara highlighted that in *Alken-Ziegler* the Supreme Court stated, "if a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required than if the defense were weaker, in order to prevent a manifest injustice." *Alken-Ziegler, Inc*, 461 Mich at 233-234. But Siudara's citation to this snippet from *Alken-Ziegler* elides that he failed to make *any* showing of good cause. The circuit court correctly determined, essentially, that Globie and Siudara failed to present any evidence of good cause. Without that initial showing, the court was not required to consider whether Globie's proffered defenses had merit.

Filing a clearly deficient motion to set aside the default and default judgment was not the end of Siudara's potentially sanctionable conduct. The day after the circuit court denied the motion

-10-

to set aside the default and default judgment, Siudara advised Globie that he could file for bankruptcy to avoid collection on the judgment. And the day after that, Siudara accompanied Globie to the office of a bankruptcy attorney located by Siudara. Siudara correctly posits that Globie had every right to file for bankruptcy and that competent counsel would advise his client of that right. But Globie did not have the right to withhold the Cadillac for more than five months when a valid court order required him to turn it over to the Thayers. As Siudara well knew, the Cadillac should have been in the Thayers' possession long before his representation of Globie began and before bankruptcy was contemplated.

Siudara's actions provided multiple potential reasons to impose sanctions under MCR 1.109(E)[1] and MCL 600.2591. Under MCR 1.109(E)(5) and (6), sanctions are appropriate "where a plaintiff asserts claims without any reasonable basis in law or fact for those claims, or where the claims are asserted for an improper purpose." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 707; 950 NW2d 502 (2019) (quotation marks and citations omitted) (analyzing substantially similar language in the prior court rule). MCR 1.109(E)(5) provides:

> The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If an attorney or a party signs a document in violation of MCR 1.109, MCR 1.109(E)(6) requires a court to "impose . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees."

MCR 1.109(E)(7) allows for further sanctions: "In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 2.625(A)(2) provides, "[I]f the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591, in turn, provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with

---

[1] The sanction provisions of this court rule were formerly located in MCR 2.114, which was repealed effective September 1, 2018.

the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

Under these rules and statute, "sanctions are appropriate when, among other things, the party had no reasonable basis to believe that the facts underlying the party's legal position were true or the party's legal position was devoid of arguable legal merit." *Peterson v Oakwood Healthcare, Inc*, 336 Mich App 333, 345; 970 NW2d 389 (2021). "[A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (quotation marks and citation omitted).

The problem is that the circuit court made no specific findings of fact capable of review by this Court. The court merely determined that Siudara made "misrepresentations" without identifying what Siudara misrepresented. The misrepresentations could have stemmed from the deficient motion to set aside the defaults, the letters or phone conversations with attorney Barnett, or sundry statements made the court. Accordingly, we must vacate the court's order imposing sanctions against Siudara and remand to allow the circuit court to elucidate the specific legal and factual bases for any sanctions it imposes. A new hearing is not required below; the court already conducted a hearing and Siudara knowingly and voluntarily elected not to appear. The court may decide the motion for sanctions on the existing record if it elects to do so.

If attorney fees are part of the sanctions imposed on remand, the circuit court must also consider the reasonableness of those fees. When considering the reasonableness of a requested attorney fee, a court must consider various factors, including but not limited to:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

-12-

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 282; 884 NW2d 257 (2016).]

"In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*.

The circuit court made no consideration of the reasonableness of the attorney fees requested by the Thayers. Indeed, Barnett did not submit his billing records until after the sanctions award was entered. On remand, Barnett will be required to justify the reasonableness of the fees. And the circuit court will be required to make findings on the record to support the amount awarded.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

-13-